WILLIAM H. C. FOLSOM, Appellant, vs. CHRISTOPHER CARLI, Respondent.

APPEAL FROM THE DISTRICT COURT OF WASHINGTON COUNTY.

Assumpsit for use and occupation cannot be supported, where the possession is adverse, and the relation of landlord and tenant has never subsisted between ǀthe parties; but the Plaintiff must declare in ejectment or trespass.   Such a demand could not have been the subject of a set-off to an action upon a note prior to the adoption of the Code in 1851.

The word "obligation," in subdivision two, of section seventy-one, page 541, of *Stat. of Minn.* was intended to apply to all matters arising *ex contractu;* but any claim that would not have been the proper subject of set-off before the adoption of the Code, does not fall within the provisions of said subdivision two.

When the basis of the transaction between the parties is a contract, and the breach of the contract amounts to a trespass, or entitles the injured party to an action for negligence, or fraud, or otherwise, in the nature of an action *ex delicto,* he is not deprived of his right to set off such a claim, or a claim arising on contract may be set off against such a cause of action.   In all such cases there is a contract between the parties, in fact, and the wrong-doer is not allowed to deprive the injured party of the advantage of it, by having tortiously violated it.

Points and Authorities of Appellant.

I.—It appears from the pleadings and the evidence that the premises described in the answer were sold to the Defendant at Sheriff's sale, under execution, on the 18th day of May, 1859, and that from and after the said 18th day of May, 1859, the defendant was entitled to the possession of said premises, and was entitled to the use, rents, issues and profits thereof; and it also appears that from and after the said 18th day of May, 1859, the Plaintiff held the possession of said premises, and had the use and received the rents and profits thereof, and that the Defendant suffered and permitted the Plaintiff so to do.

II.—The Plaintiff having held possession of the premises from the date of the sale, and had the use and rents thereof which belonged to the Defendant, there was a legal obligation resting upon the Plaintiff to pay the defendant the value thereof, and the fact that the Plaintiff had a deed from the judgment debtor, and went into possession under that deed and occupied the premises, claiming under that deed as owner, does not excuse the Plaintiff from that legal liability.

III.—The distinction between the forms of action are abolished in this State; parties are to state the facts constituting the cause of action, and if upon these facts the Defendant was entitled to recover his counter-claim, the Plaintiff cannot defeat the Defendant's right, simply by making an adverse claim to the premises. *Minn. Stat.* 532, *see.* 1.

IV.—When the grantor remains in possession of granted premises, or when the judgment debtor remains in possession of premises after sale thereof under execution (under the statute of July 29th, 1858), the grantee may elect to treat him as a tenant, or as a trespasser or disseisor; the purchaser may waive the tort where the grantor or judgment-debtor hold over against the will of the purchaser. *Curtis vs. Treat*, 8 *Shep.* 525; *Larrabee vs. Lambert*, 34 *Maine* 79; *Clough vs. Hosford*, 6 *N. H.*, 231. Neither an express permission, or a demise, or an actual tenancy, were necessary to the maintenance of the technical action of assumpsit for use and occupa-

tion under the former practice. 2 *Sel. Nisi Prius*, 1424; *Cummings vs. Noyes*, 10 *Mass.* 433; *Chitty on Con.* 332; 1 *Dutch.* 293; *Pierce vs. Pierce*, 25 *Barb.* 243.

V.—It is not alleged, nor was it shown upon the trial, that the Plaintiff occupied the premises against the Defendant's will, nor either that the Defendant had notice or knew that the Plaintiff claimed to own the premises, or hold them adversely to the Defendant; and the Plaintiff cannot defeat the Defendant's counter-claim by first making known such claim in his reply, or upon the trial. *Oakes vs. Oakes*, 16 *Ill.* 106.

VI.—The Court below erred in overruling the Defendant's objection to the introduction of the deed from Noah McKusick and wife to the Plaintiff.

VII.—The Court below erred in overruling the Defendant's objection to the offer of the Plaintiff to show that the Plaintiff went into possession of the premises under the deed from McKusick and wife.

VIII.—The Court below erred in overruling the Defendant's objection to the proposal of the Plaintiff to show that the Plaintiff had remained in possession of the premises under and by virtue of that deed.

IX.—The Court below erred in charging the Jury as follows, to wit:

" If you find that Noah McKusick, being the owner of the premises, with his wife, subsequent to the judgment, but before the sale to the Defendant, sold and conveyed the premises to the Plaintiff, and that the Plaintiff entered into possession, and has since retained the possession, claiming under that title, then the Defendant cannot recover under his counter-claim; and the Plaintiff would be entitled to recover the amount of his claim without set-off."

Points and Authorities of Respondent.

I.—The Plaintiff holding adversely to the Defendant the premises for the use and occupation of which the Defendant claims the right to recover, and the relation of landlord and tenant having never existed, the Defendant cannot offset or recover his counterclaim. See 1 *Chitty's Pleadings*, 107; *6th*

*N. H.*, 298; 1 *Wend.*, 134; 6 *John.*, 46; 11 *Vt.*, 190; 13 *John.*, 489; 11 *Pickering*, 1; 12 *Mass.*, 43; 17 *ib.*, 299; *Taylor's Landlord and Tenant*, sec. 636, and cases cited; *Comp. Stats. of Minn.*, 541; 3 *Cow.*, 286.

II.—The Court below properly received in evidence the deed from Noah McKusick and wife to the Plaintiff for the purpose for which it was offered.

It was competent for the Plaintiff to show an adverse title, and connect himself with it, existing prior to Defendant's pretended claim.

III.—The Court below committed no error in permitting the Plaintiff to show under what title he went into the possession and held said premises.

IV.—The charge of the Court was a proper exposition of the law as applied to the facts of this case. See authorities above cited.

W. H. BURT, Counsel for Appellant.

L. E. THOMPSON, Counsel for Respondent.

*By the Court*—FLANDRAU, J.—Carli brings suit against Folsom on a promissory note for $129.52, dated January 22, 1859, payable in seven months after date with interest at one per cent. per month. The answer of Folsom sets forth that on the 30th day of November, 1857, one Lee recovered a judgment against two McKusicks and the Defendant Folsom, for $445.35. That prior to the recovery of the judgment, at the time thereof, and up to the 25th day of August, 1858, Noah McKusick, one of the Defendants in the judgment, owned a certain piece of land in fee. That execution was issued on the judgment February 12, 1859, and the land of Noah McKusick sold thereon on the 18th day of May, 1859. That the Defendant purchased the land at the sale for $338.81. That no redemption has been made, and no interest paid, and that the Plaintiff has been in the occupation of the premises since the sale by the permission and sufferance of the Defendant, and the Defendant claims the value of the use of the premises as a counter claim to the note.

The reply alleges that the Plaintiff on the 28th day of August, 1858, purchased the premises from Noah McKusick and wife in fee, and that he has been in the occupation of them ever since by virtue of his ownership and not otherwise.

Upon this state of facts the Plaintiff had a verdict, the Court holding, and directing the jury that the Defendant could not recover his counter claim for use and occupation if the Plaintiff had been in possession under his purchase from Noah McKusick.

The question here is not whether the claim is recoverable at all, but whether it can be put in as a counter claim. The Plaintiff held and enjoyed the premises under a title from the real owner free from any connection with the Defendant or the judgment under which he purchased. His possession was adverse to the Defendant, and there was no privity or contract between them upon which the relation of landlord and tenant could arise; therefore any claim that the Defendant has against the Plaintiff for the use and occupation, or more properly speaking, for the value of the possession of the land after he became entitled to it, does not arise out of any contract between them, either express or implied, but upon his wrongful and tortious holding. It is quite clear that the Defendant could not have maintained an action of assumpsit for such use and occupation, before the forms of actions were abolished, as that action could only be maintained as its name imported, upon a contract or undertaking, express or implied. His remedy would have been ejectment or trespass. 1 *Chitty's Pleadings*, 107; *Smith vs. Stewart*, 6 *John.*, 46; *Bancroft vs. Wardwell*, 13 *John.*, 489; *Featherstonhaugh vs. Bradshaw*, 1 *Wend.*, 134; *Vanderheavel vs. Storrs*, 3 *Conn.*, 203; *Little vs. Pearson*, 3 *Pick.*, 301; *Jones vs. Tifton*, 2 *Dana*, 295.

Let us now see whether the claim of the Defendant would have been the subject of a set-off, before the forms of action were abolished. At common law, independently of statutes, a set-off of cross demands, unconnected with each other, was not allowed. A defendant could claim, by way of deduction, all just allowances or demands accruing to him, or payments made by him in respect of the same transaction or account which formed the ground of the action, but could go no far-

ther. This was remedied by the 2 *Geo.* 2, *ch.* 22, *sec.* 13, where mutual debts were allowed to · be set-off against each other. 1 *Chitty's Pleadings*, 569-70-71. · The demand must have been in the nature of a debt, and a set-off was excluded in all actions arising *ex delicto*, *Id.* 571-2. The general features of the English statutes of set-off are embodied in our own. *Comp. Stats.* 503, *sec.* 44. This demand could not have been the subject of a set-off against the Plaintiff's claim prior to 1851, the date of the abolition of the forms of actions. It must not be overlooked, that although actions formerly had different names and forms, yet these names and forms were not mere empty words, but arose out of the nature of the sub-ject matter of the action, and entailed upon it substantial pri-vileges and disabilities, materially affecting the rights of parties.

Now what is the effect of our statute upon the subject mat-ter of actions, by providing that "The distinction between the forms of actions at law, heretofore existing, are abolished; and there shall be in this Territory hereafter but one form of action at law, to be called a civil action," &c. ? *Comp. Stats.* 532, *sec.* 1. It is fully explained by subsequent portions of the same act, which point out what shall be stated in the com-plaint, answer and reply, which are the only pleadings now allowed to make up the issues; and it is quite evident, from the chapter on ·answers, that no change whatever was de-signed to be made concerning the nature of the demand that might be pleaded to bar, or reduce a recovery by the Plain-tiff from the law, as it existed before the passage of the act. The familiar terms of recoupment· and set-off are discarded in the new law, and the word counter-claim substituted; but what that counter-claim comprehends is explained. *Section* 71, *p.* 541, provides that "The counter-claim mentioned in the last section must be an existing one in favor of the Defendant and against the Plaintiff, between whom a separate judgment might be had in the action, and arising out of the following causes of action:

1. "A cause of action arising out of the contract or transac-tion set forth in the complaint, as the foundation of the Plain-tiff's claim, or connected with the subject of the action."

Now this is what would have been previously allowed by way of recoupment, and it neither enlarges nor limits that doctrine, but simply declares it as it previously existed.

2. "In an action arising on obligation, any other cause of action arising also on obligation, and existing at the commencement of the suit." This is merely an enunciation of the law of set-off, and does not enlarge it in any respect. If the word that is employed by the statute, "obligation," should be confined within its strict technical sense, it would greatly limit the law of set-off, as it more properly means a "bond." *Co. Lit.* 172 *a;* 2 *Black. Com.* 340. But we think the legislature intended it to receive a more liberal construction, and to apply to all matters arising *ex contractu.*

It is our opinion that any claim that would not have been the proper subject of set-off before the adoption of the code, does not fall within the provisions of *subdivision 2 of section* 71, *page* 541 *of the Compiled Statutes;* above quoted.

While the form of actions were in existence, a party had what was called the right of election of actions. This right in the hands of a skilful pleader could be used to great advantage. There were many cases in which a Plaintiff could declare in trespass, trover, or case according to the facts, or he might elect to waive the tort and declare in assumpsit. So in general a Plaintiff could elect to declare either in assumpsit or debt. One of the most usual reasons in practice for adopting a form of action *ex delicto,* instead of declaring in assumpsit, was to cut out an apprehended off-set, which could be interposed to the latter, but not to the former. Many other advantages could be gained by this right of election, which it is unnecessary to enumerate here. The subject is fully treated in 1 *Chitty's Pleadings,* 207-212. *Title "Of election of actions."* But it is believed that with the abolition of the forms of action, and the substitute adopted by our statute, together with the new system of pleading, many, if not all these advantages are necessarily lost to the pleader. He must now state his facts; he must state them truly; and he must prove them as alleged, to succeed. The Defendant in his answer here, attempted to state his claim for the use and occupation of the premises, in the manner he would have done had he

been framing a declaration therefor in assumpsit. He alleges that the occupation of the Plaintiff was by his " sufferance and permission," thereby establishing the relation of landlord and tenant between them, upon the truth of which alone could the claim be set off. This is put in issue by the reply, and the real facts are therein alleged, the jury finding the reply to be true.

There are many cases where the basis of the transaction between parties is a contract, and the breach of the contract may amount to a trespass, or entitle the injured party to an action for negligence, or fraud, or otherwise, in the nature of an action *ex delicto*. We do not mean to hold that in such cases the party is necessarily deprived of his right to set off such a claim, or that a claim arising on contract may not be off-set against such a cause of action. No such result follows from our view of the code. In all such cases there is a contract between the parties in fact, and the wrong-doer is not allowed to deprive the injured party of the advantage of it by having tortiously violated it.

In the case at bar there never was any contract between the parties in fact, or by implication of law. They were total strangers to each other, claiming title to the land from different and adverse sources. In relation to such cases, Mr. Chitty says, " Assumpsit for use and occupation cannot be supported where the possession is adverse, and the relation of landlord and tenant has never subsisted between the parties, but the Plaintiff must declare in ejectment or trespass." 1 *Chitty's Pleadings* 107, *and cases cited.*

We think the Judge was correct in his rulings, and the judgment should be affirmed.