MAX HIRSCHMAN, AS ADMINISTRATOR OF THE ESTATE OF ASHLEY K. PETERSON DECEASED, AND EMMA PETERSON, *Appellants,* v. HODGES, O'HARA & RUSSELL COMPANY, A CORPORATION, F. S. HODGES, F. G. RUSSELL AND F. J. O'HARA *Appellees.*

1.  A misrepresentation by a vendor to be a ground for a rescission of a contract, must be in reference to some material thing unknown to the vendee, either from not having examined, or from want of opportunity to be informed, or from entire confidence reposed in the vendor, and his remedy must be pursued, in good time, after the injury is discovered. It is well established in equity that nothing but what is plainly injurious to good faith ought to be considered as a fraud sufficient to impeach a contract. The mere fact that an agreement is improvident is no ground for setting it aside; it can only be avoided because of surprise, or mistake, want of freedom, undue influence, the suggestion of falsehood, or the suppression of truth.

2.  If after a representation of fact, however positive, the party to whom it was made institutes an injury for himself, has recourse to the proper means of obtaining information, and actually learns the real facts, he cannot claim to have relied upon the misrepresentation, and to have been misled by it. The same result must plainly follow, when after the representation the party receiving it has given to him a sufficient opportunity of examining into the real facts when his attention is directed to the sources of information, and he commences or professes to commence an investigation. The plainest motives of expediency and justice require that he should be charged with all the knowledge which he might have obtained had he pursued the injury to the end with diligence and completeness. He cannot claim that he did not learn the truth and was misled.

This case was decided by the court En Banc.

Appealed from the Circuit Court for Lake County.

The facts in the case are stated in the opinion of the court.

*Kay, Doggett & Smith,* for Appellants;

*Barrs, Odom & Browder* and *Hilburn & Odom,* for Appellees.

HOCKER, J.—This is an appeal from a decree of the Circuit Court of Lake County dismissing the bill of the appellants filed for the purpose of obtaining a rescission of a contract of sale of certain turpentine and other property made by the appellee corporation to appellant Peterson, and also an appeal from a decree prayed for in a cross-bill filed by appellees against appellants to foreclose a lien on the turpentine plant and a mortgage on other property given as security for the purchase price of the turpentine plant.

The bill alleges in substance that the appellant company through its agent E. H. Tomlinson in the months of November and December, 1906, advertised for sale a turpentine location situated in Lake, Orange and Sumter counties, known as the Mascotte Turpentine Place, which said turpentine location was alleged to include twenty crops of boxes, still fixtures, pump, dip barrels. commissary stock and store, and twelve thousand acres of land which is described in the contract attached to the bill; that complainant read the advertisement and got into communication with Hodges, O'Hara & Russell Company through its agents, the defendants Hodges and Russell and its vice-president, secretary and general manager F. J. O'Hara, and by false and fraudulent representations of its agents aforesaid, especially O'Hara, interested complainant in the purchase of said turpentine location; that these parties, especially O'Hara, falsely

and fraudulently represented to complainants that the turpentine location contained twelve hundred acres of land, twenty crops of first and second year boxes, and enough round timber to cut twenty more boxes, and that said location had been surveyed by a timber surveyor, and that it had been estimated by said surveyor said location would cut 42,000,000 feet of lumber. That complainant A. K. Peterson was influenced by the false and fraudulent representations aforesaid to go to Lake county with O'Hara for the purpose of inspecting said turpentine place, and O'Hara sent an agent, one J. H. Boyd, to point out the lands covered by said location; that Boyd instead of pointing out the lands included in the contract hereinafter described, acting under the instructions of O'Hara, pointed out to complainant about 4,000 acres of finely timbered land, not included in said location and not described in the contract, and only pointed out the best lands in the location and falsely represented that none of the lands contained in said location were swamp or marsh lands except about one acre which was pointed out to complainant, and that none of the said lands had been turpentined.

2. That influenced by the representations of defendants and their agent Boyd, complainant was finally induced to enter into negotiations for the purchase of said turpentine location, but before entering into any sort of negotiations for the purchase of said turpentine location complainants demanded an abstract of title covered by said location; that O'Hara replied the abstract was in the hands of attorneys of the company at Palatka, Florida, who prepared the same, and that he would go to Palatka and get said abstract; that on the following day O'Hara returned from Palatka and said he had the abstract sent to the clerk of the circuit court of Lake county to be brought up to date, and that same would

be returned in a few days; that complainants waited about two weeks for the return of said abstract, and same was not delivered to them, but relying on the assurance of defendant O'Hara that the title of defendant company to said lands was perfect, complainants were induced to enter into an agreement whereby complainants agreed to purchase said turpentine location upon the terms and conditions designated in a written agreement, a copy of which is attached to the bill as a part of it, marked exhibit "A", and that to secure the payment of the notes herein described complainant Peterson and his wife executed a mortgage upon certain property in Jacksonville which is described owned by complainant Emma Peterson, in favor of defendant company; that the mortgage was drawn by defendants' attorney George M. Powell, and was left by complainants with said Powell in escrow to be delivered to defendants when the said abstract of title to the said land in said contract had been delivered to complainants and the title of defendants had been pronounced satisfactory by the attorneys of complainants. That after the execution of said contract complainant A. K. Peterson took possession of said turpentine location and from time to time has learned of the fraudulent misrepresentations of the defendants; that about 4,000 acres of the best land which was pointed out to complainant as aforesaid, and represented to be included in said location, is not included therein, but is owned by parties other than defendants, which fact was not ascertained until after complainant Peterson surveyed and established the line of the land included in said Mascotte Turpentine Location; that instead of said location containing twenty crops of boxes, it does not contain more than eleven; that instead of sufficient green timber to cut twenty crops it does not contain sufficient to cut more than four crops; that complainant has

learned since the execution of said contract, defendants never had the timber upon said location estimated by a timber surveyor, and that the amount of the timber is far short of the amount represented; that the defendant company does not own large portions of the land described in said contract, and that complainants had been obliged to abandon large portions of the land described in said contract because it had been shown complainants that the titles of others are superior to that of the defendant company, and that the complainant Peterson had been threatened with a criminal prosecution for working certain portions of said land for turpentine purposes; that defendants have refused to deliver to complainants the abstract of title, and complainants are informed and believe and so charge upon information and belief, that an abstract of title will disclose the fact that defendant company has no title to a large portion of the lands included in said location and described in the contract.

The bill then charges that George M. Powell has delivered the mortgage to the defendant company and that it will assign same to an innocent purchaser for value and without notice, unless restrained, etc.

The bill then offers to deliver possession of said turpentine location to defendant company at any time that may be designated by the court, and contains prayers for the cancellation of the contract, for a perpetual injunction against the transfer of the mortgage, for general relief, etc.

The agreement between the Hodges, O'Hara & Russell Company, a corporation, of the first part, and A. K. Peterson of the second part, attached to the bill as part of it, provides "that the parties hereto in consideration of the mutual and dependent covenants and agreements hereinafter contained have agreed and by these presents do agree as follows:

First. The said party of the first part does hereby agree to sell and convey unto the party of the second part, by special warranty deed and the price and upon the terms and conditions hereinafter set forth all of the rights, title and interest of the said first party in and to all of the following described real and personal property situate, lying and being in the county of Lake and the county of Orange, State of Florida, and more particularly described as follows: Then follows a description of the property including a still, pump, cooper shop, commissary and stock of merchandise and all fixtures therein, eight mules, three horses, three wagons, one buggy, all saddles, bridles and harness, one hundred dip barrels more or less, and generally all shanties, shelters, barns, lots, tools, fixtures and supplies on the place intended for use in connection with the turpentine business, excepting therefrom all manufactured spirits of turpentine and resin which shall be produced and manufactured at said place up to and including March 30th, 1907.

The price fixed at $65,000.00 payable in six years according to the tenor of six promissory notes of even date with the contract, *viz.* one note for $5,000.00 payable on or before one year from date. One for same amount payable on or before two years from date, one for same amount payable on or before three years from date, one for same amount payable on or before four years from date, one for same amount payable on or before five years from date, and one for $40,000.00 payable on or before six years from date,—all bearing 8% interest.

The contract gives immediate possession to Peterson, and provides that a deed shall be executed and delivered to Peterson upon final and complete payment of said notes, and contains an agreement on the part of Peterson to observe the terms of the contract, not permit any waste; pay the taxes for 1907 and subsequent years;

keep the property free from liens; keep the personal property in good repair; keep the turpentine boxes raked, so as to prevent damage by fires, and consign and ship to the J. P. Williams Company all the produce of turpentine operations, until $16,500.00 are paid. Time is made of the essence of the contract, and any failure of Peterson to pay the notes according to the tenor, or to perform any of the covenants and agreements upon his part, this contract shall be forfeited at the option of corporation—all payments shall be forfeited—the property shall be surrendered. The contract is dated 28th March, 1907.

The Hodges, O'Hara and Russell Company, and other defendants answered the bill, and the company filed a cross-bill to foreclose their lien and the mortgage given it by Peterson and wife. In the answer, it is admitted that the company advertised the Mascotte Turpentine place, through Tomlinson, but denied the facts as stated in the bill and alleged that it advertised about 72000 yearling boxes and 52000 virgin boxes, making a total of less than twelve crops of boxes of 10500 each, and that it was so represented to Peterson at all times. The answer admits the negotiations leading up to the contract, but denies that any one of the defendants, or their agents, made any false or fraudulent representations. The answer admits that they represented the place as containing about 12000 acres of land, but denies specifically that they represented it as having any other number of boxes than as above stated, or that there was enough timber to cut twenty more crops of boxes or any particular number of boxes.

It denies that defendants represented that they had had a surveyor estimate the timber, or that they had such an estimate made, or that the place would cut 42,000,000 feet of lumber, but alleges on the contrary that they

represented to Peterson that the timber had not been surveyed, and that it was generally estimated to cut 2500 (board measure) per acre, and that in their opinion, it would cut 36,000,000 feet of lumber. The answer admits that Peterson went to Lake county, Florida, in company with O'Hara for the purpose of inspecting said location, but denies that they used any fraud or misrepresentation to induce him to make said purchase. In brief, the answer admits the execution and delivery of the contract attached to the bill, the notes and mortgage referred to therein and that Peterson went into possession of the property, but denies each and every one of the false and fraudulent representations and practices alleged in the bill.

The cross-bill alleges the execution of the notes and mortgage, and also of the contract that default has been made which matures the whole debt tendering a deed of the property embraced in the contract and prays a foreclosure of the lien and mortgage. The answer to the cross-bill sets up by way of defense the misrepresentations and fraudulent practices alleged in the original bill. Replications were filed and a large amount of testimony taken. Upon final hearing the circuit judge made a decree dismissing the bill of appellants, and foreclosing the lien and mortgage of the appellee corporation. The case is here on appeal from this decree.

The assignments of error are: (1) That the circuit judge erred in dismissing the bill of complaint, (2) That he erred in granting the prayers of the cross-bill, (3) That he erred in declaring a vendors lien on the property described in the cross-bill, (4) that he erred in foreclosing the mortgage described in the cross-bill, (5) that he erred in not decreeing a cancellation of the contract described in the bill of complaint, and (6) That he erred in deciding that the testimony in said cause showed that the original

bill should be dismissed and the cross-bill should be sustained.

It would render this opinion too long to set forth in detail the evidence produced in the case. It seems to us that the complainants in the bill have failed to sustain by a preponderance of the evidence their allegations of misrepresentations and fraudulent practices in procuring Peterson to enter into the contract. This was all they were required to do, as the bill waived an answer under oath. The first allegation of the bill that Hodges, O'Hara & Russell Company, through its agent, Tomlinson, advertised the Mascotte Turpentine location as including twenty crops of boxes is shown to be incorrect by the advertisement which only represented that the place contained 72,000 yearling boxes, and 52,000 virgin boxes, a total of 124,000 boxes, or, on the basis of 10,500 boxes to the crop, which appears to be the standard,—a little less than twelve crops of boxes—while there was a conflict in the testimony as to the actual number of boxes, there was testimony which supported the statement in the advertisement. O'Hara denied the statement of the bill and the evidence of Peterson as to the alleged misrepresentations made by him to Peterson in regard to the number of boxes and the quantity of timber. The statements of Peterson as to the agreement to furnish him an abstract are denied by O'Hara and Powell, the attorney who drew the contract, and Powell also denies that the mortgage was left with him by Peterson in escrow. See the discussion in McClinton v. Chapin, 54 Fla., 510, 45 South. Rep. 35, S. C., 14 Amer. & Eng. Ann. Cas. 365. As to the alleged shortage in the number of acres of land by reason of adverse claims, it appears that Dutton & Co. were working 500 or 600 acres of the land for turpentine purposes, under an agreement with the Hodges O'Hara and Russell Co., by which the latter were to work, or were

working about the same number of acres claimed by Dutton & Co., and that Peterson knew of this arrangement before he entered into the contract. It also appears that several people were claiming small portions of the land, but it is not shown that any one of them had a better title to the land than the Hodges, O'Hara and Russell Company. O'Hara testifies that the deeds to the property were all given to Peterson and that he knew the character of the titles which the company had, and that he knew that there were a number of tax titles. The evidence shows that O'Hara invited Peterson to inspect the property for himself before the contract was made; that he went with him to Mascotte and introduced him to a Mr. Boyd as one who was familiar with and could show him the property; that Boyd spent two days and a half with Peterson in inspecting the property, and would have continued to show him the property, but Peterson expressed himself as satisfied and left. Boyd denies each and every misrepresentation which Peterson says he made. The land was very much scattered, contained a good deal of waste land, the opinion of the witnesses varying from one-eighth to one-half. The land does not appear to have ever been accurately surveyed to determine the amount of waste land or the exact number of boxes, or the exact amount of round timber, or the exact quantity of lumber which the location contained. Upon all these questions we have nothing but the varying opinions of witnesses, who were more or less familiar with the property. The evidence shows that spirits of turpentine was worth about sixty cents a gallon when Peterson went into possession of the property about the 1st of April, 1907; that soon thereafter the price fell to less than forty cents a gallon, that Peterson was in possession of the property for nine or ten months, that he did not pay the taxes, did not ship any of the product to

the J. P. Williams Company as he had agreed, and did not make a payment on the purchase price. Sometime after he went into possession he became dissatisfied with his purchase and claimed that the place had been misrepresented to him. He seems to have proposed terms for the cancellation of the trade in several letters to O'Hara and the company. None of the terms offered by him were accepted, and about March 31st, 1908, he seems to have abandoned the property.

This court, in Stephens v. Orman, 10 Fla., 9, has stated the law applicable to cases like the instant one. It is there said:

"It is well settled that a suppression of truth, or suggestion of what is not true, in some material point, will be ground for setting aside any contract. Again, concealment of a material fact by a party to a contract is ground for relief, where he had better opportunity to know than the other; but where the facts lie equally open to the vendor and vendee, with equal opportunity of examination, and the vendee undertakes to examine for himself without relying upon the vendor's statements, it is no evidence of fraud that the vendor knew facts not known to the vendee, and does not make them known to him.

A misrepresentation by a vendor to be ground for a rescission of the contract, must be in reference to some material thing unknown to the vendee, either from not having examined or from want of opportunity to be informed, or from entire confidence reposed in the vendor, and his remedy must be pursued in good time after the injury is discovered. * * * It is a well established principle in equity that nothing but what is plainly injurious to good faith ought to be considered as a fraud sufficient to impeach a contract. * * * The mere fact that an agreement is improvident, is no ground for setting it aside; it can only be avoided because of surprise, or

528     SUPREME COURT OF FLORIDA.

Hirschman *et al.* v. Hodges, O'Hara & Russell Co.—Opinion of Court.

mistake, want of freedom, undue influence, the suggestion of falsehood or the suppression of truth." See Mizell Live Stock Co. v. J. J. McCaskill Co., decided here at the present term, and authorities there cited.

In 2 Pomeroy's Eq. Jur. (3rd ed.) section 893, it is said: "If after a representation of fact, however positive, the party to whom it was made institutes an inquiry for himself, has recourse to the proper means of obtaining information, and actually learns the real facts, he cannot claim to have relied upon the misrepresentation and to have been misled by it. Such claim would simply be untrue. The same result must plainly follow when, after the representation, the party receiving it has given to him a sufficient opportunity of examining into the real facts, when his attention is directed to the sources of information, and he commences or purports, or professes to commence, an investigation. The plainest motives of expediency and of justice require that he should ·be charged with all the knowledge which he might have obtained had he pursued the inquiry to the end with diligence and completeness. He cannot claim that he did not learn the truth, and that he was misled." In a note to this section the foregoing doctrine is further discussed, and a number of cases are referred to as sustaining it, especially the cases of Attwood v. Small, 6 Clark & F. 232, decided by the House of Lords, and Jennings v. Broughton, 5 DeGex, M. & G. 126; Stackpole v. Hancock, 40 Fla., 362-377.

As a general rule, it is essential to the rescission of a contract that the parties should be placed in *statu quo.* 22 Am. & Eng. Ency. Law (2nd ed.) ; Mizell v. Watson, 57 Fla., 111, 49 South. Rep. 149.

Mr. Peterson was given the opportunity to examine thoroughly every acre of the land in question. He had had four years experience in the business. He was not

prevented in any way from calling in the aid of any other person whom he might desire. He may have acted improvidently, but applying the foregoing principles of law to the facts as they appear, we are unable to discover that the Circuit Judge erred in his decree dismissing complainant's bill. They failed to make out their case by a preponderance of the evidence. Nor can we discover that he erred in decreeing a foreclosure. Facts had evidently transpired which matured the whole $65,000.00.

The decree of the Circuit Court is affirmed.

All concur except TAYLOR, J., absent on account of illness.