PEACOCK HOTEL, INC., a Florida corporation, R. D. SMITH and J. H. GARRISON, *Appellants,* vs. CORDELIA SHIP-MAN and A. K. SHIPMAN, her husband, and next friend, *Appellees.*

138 So. 44.

Division B.

Opinion filed November 20, 1931.

*Hawthorne & Burton,* of Miami, for Appellants;
*Blackwell & Gray,* of Miami, for Appellees.

DAVIS, J.—This is an appeal from a final decree of foreclosure of a purchase money mortgage. The bill of complaint was brought by Cordelia Shipman, joined by A. K. Shipman, her husband. The appellants were defendants in the court below and allege error in the refusal of the court to give effect to a claim on their part that the mortgage was obtained by fraud for which they should be permitted to rescind the transaction in which the mortgage was given.

In the answer of the defendant Peacock Hotel, Inc., it was set forth that certain misrepresentations and fraud had been perpetrated by the complainants upon Coral Peacock, a widow, and Cecil A. Peacock, a minor, whose disabilities of non-age had been removed, which answer (purporting to be a defense to the bill as well as a counterclaim by way of affirmative relief) sets forth that Coral Peacock, a widow, inexperienced in business and Cecil A. Peacock, a minor whose disabilities of non-age had been removed but also inexperienced in business, were induced to buy the premises covered by the mortgage sought to be foreclosed and to cause the defendant corporation, the

appellant, Peacock Hotel, Inc., to be formed to take title to said premises for hotel purposes and to execute the mortgage under consideration.

The representations made for the purpose of inducing the Peacocks to enter into the transaction are alleged to have been that the Belfort Hotel the property in question contained sixty rooms suitable for hire and income, whereas in truth and in fact it only contained fifty-six; that the hotel was constructed of concrete and concrete blocks and was in excellent repair, whereas in truth and in fact it was made partly of stucco resembling concrete and the roof leaked to a certain degree; that the complainant had made an income from the operation of the Belfort Hotel the previous year of more than $20,000.00, whereas the hotel only took in $15,000.00 gross the first year that the mortgagors operated it; that said Peacocks could take over the hotel and make enough in operating it to pay the mortgage in question, whereas in truth and in fact experience proved that they were unable to do so; that the hotel would be conveyed free and clear of encroachments, whereas in truth and in fact there were certain encroachments; that the successful operation of the Belfort Hotel did not call for experience, but was a business which the Peacocks could successfully operate and make enough money to pay off the mortgages as they came due, together with other expenses and leave a balance sufficient to pay said Peacocks handsome profits on their investments; that said hotel was a bargain at $125,000.00, the total purchase price the Peacocks agreed to pay. The answer contained a prayer for affirmative relief and treating the same as in the nature of a counter-claim or cross-bill, which was not replied to by the complainants, the defendants caused a decree pro confesso to be entered by the Clerk taking the so-called counter-claim as confessed.

No attack was made upon the sufficiency of the answer to state a defense, the cause being referred by the court

to a special master to make findings of law and fact and report the same to the court, which was done. The master found the equities to be with the complainants and that the defense set up in the answer had not been sustained in law or in fact. This finding of the master was confirmed by the chancellor who entered the decree of foreclosure appealed from, and appointed a receiver for the properties to operate the hotel pending the appeal. Both the final decree of foreclosure and the order appointing the receiver are involved in this appeal.

It seems to be established by the authorities that where it is perfectly plain to the court that one party has overreached the other and has gained an unjust and undeserved advantage which it would be inequitable to permit him to enforce, that a court of equity will not hesitate to interfere, even though the victimized parties owe their predicament largely to their own stupidity and carelessness. This rule is perhaps most forcibly expressed by Mr. Justice Root, speaking for the Supreme Court of Washington in Stone v. Moody, 41 Wash. 680, 84 Pac. 617, 85 Pac. 346, 5 L. R. A. (N. S.) 799, where he said:

"It is well known that many good people and people of average or greater intelligence are sometimes duped and mislead by the skill, cleverness and artifices of those who are adepts in the matter of deceiving their fellowmen; and the courts should not throw about schemers of this kind protection that will tend to encourage the practice of their arts. Such people should not find encouragement in the thought that, by keeping their machinations within the letter of the law, they may find sanction for their practices and reap the reward of their craftiness. To the victim it is of little import whether his property is taken from him by a bold and forcible robbery, or by an ingenious and unsuspected deception. The injury to him is the same; and the evil effect of court decisions which permit the wrongdoer to enjoy the fruits of his chicanery is of no small import when viewed from the standpoint of public policy. It is not the function of courts to make contracts for

parties, or to relieve them from the effects of bad bargains. But, where the simplicity and credulity of people are taken advantage of by the shrewdness, overreaching, and misrepresentation of those with whom they are dealing, and they are thereby induced to do unwittingly something the effect of which they do not intend, foresee, or comprehend, and which, if permitted to culminate, would be shocking to equity and good conscience, we think a court of equity may with propriety interpose.''

But in the present case it was neither alleged nor proven that there was any over-reaching on the part of the appellees, or that they gained an unjust or undeserved advantage which it would be inequitable or unrighteous to permit them to obtain. On the contrary, it appears that both Mrs. Peacock and her son were well informed, or in a position to be well informed, of every detail of the transaction that they were entering into and of its probable consequences. Eliminating all other testimony and taking their own statements at their full face value, they have failed to demonstrate wherein they are entitled to rescind the transaction and obtain the relief asserted by their answer under the principles laid down by this Court in the case of Stokes, et al. v. Victory Land Co., 99 Fla. 795, 128 So. 409.

Where rescission is asked for of a contract for the purchase of property upon the ground of a fraudulent oral misrepresentation of a material existing fact affecting the nature or usefulness of the property, the fact about which the representation is made must be one the true nature of which is not capable of being ascertained by the exercise of reasonable effort on the part of the party to whom the misrepresentation is made.

The record discloses that the Peacocks and the Shipmans were strangers and that they dealt at arm's length. If, as appellants contend, they relied implicitly upon appellees' statements as to the number of revenue producing rooms that the hotel contained, as to its state or condition of

repair, as to the possibility of making money in its operation, and as to the profits which they might realize from their investment, they are nevertheless charged with all the knowledge which they might have obtained had· they pursued an inquiry to the end with diligence and completeness regarding these matters. They cannot claim more than a year after the mortgage was given and after foreclosure proceedings were started that they were misled to their injury to such extent as to entitle them to rescind the entire transaction after they had caused a corporation to be organized to take title to the property they were buying and otherwise exhibited evidence of shrewd business judgment throughout the entire transaction.

One possessing the right to rescind a transaction on the ground of fraud, misrepresentation, mistake or other sufficient cause and desiring to exercise such right, must not be guilty of any unreasonable or unnecessary delay in the assertion of his purpose and in taking steps to make it effective, or he will be denied relief in equity on the ground that such delay is tantamount to a waiver of his objections to the transaction. Mizell v. Watson, 57 Fla. 111, 49 So. 149; Hirschman v. Hodges, 59 Fla. 517, 51 So. 550. See also Ansley vs. Bank of Piedmont, 113 Ala. 467, 21 Sou. Rep. 59.

In the case at bar the purchaser went into possession of the property on May 17, 1929. The answer asking for the rescission and cancellation of the purchase contract was not filed until October 15, 1930, with no excuse whatsoever being offered for the delay.

The next point presented is whether or not the decree pro confesso upon defendants' answer setting up an alleged counterclaim was properly entered. The answer filed, while containing a prayer for affirmative relief and for process, appears to have been treated by the court below as being primarily an answer containing defensive matter of an affirmative character set up by way of con-

fession and avoidance of the complainants' prayer for relief.

Under Section 4907 C. G. L., 3121 R. G. S., unless the answer asserts set-off or counterclaim no reply to it is required without a special order of the court or judge, but the cause is deemed at issue upon the filing of the answer and any new affirmative matter therein is deemed to be denied by the complainant. Only when the answer includes a set-off or counterclaim is a party against whom it is asserted required to reply to it within twenty days after the filing of the answer, and only on such answer may a decree pro confesso be entered against the complainant in default of reply.

To constitute a set-off or counterclaim, the answer must not only set up new affirmative matter which would constitute a defense, but must set up such an independent right in the defendant as will make his claim a proper matter of set-off or counterclaim as these terms are used in the law.

A set-off has been defined as a mode of defense whereby the defendant acknowledges the justice of the complainant's demand on the one hand, but on the other sets up a demand of his own to counter balance it either in while or in part. A set-off is not technically a mere matter of defense, although in a certain sense it is of a defensive nature. State v. Colorado Fuel Co., 142 N. Y. 236, 37 N. E. 1, 25 L. R. A. 67; Stadley v. Helena First National Bank, 22 Mont. 190, 56 Pac. 111, 74 Am. St. Rep. 582. On the other hand, a counterclaim is a cause of action existing in favor of the defendant against the complainant. Venable v. Dutch, 37 Kan. 515, 15 Pac. 520, 1 Am. St. Rep. 260. A counterclaim is the equivalent of a set-off and a recoupment combined. Folsom v. Carli, 6 Minn. 420, 80 Am. Dec. 456. A recoupment may spring from a wrong, provided it arises out of the transaction set forth in the bill of complaint, but a recoupment goes to the

justice of the complainant's claim and no affirmative judgment can be had thereon against the complainant. Ansley v. Bank of Piedmont, 113 Ala. 467, 21 So. 59, 59 Am. St. Rep. 122; note to Ann. Cas. 1914B 119.

Tested by the foregoing definitions, the answer filed by the defendants in this case in the court below was neither a set-off nor a counterclaim within the purview of those terms as used in our statute requiring a special answer. The object of the answer was the rescission of the transaction, including the mortgage sued on, and was therefore almost wholly defensive in character.

The mere incorporation by appellant in its answer of a prayer for relief did not cast upon appellees any obligation to make special reply to the affirmative matter set up which related entirely to the transaction by which the complainants' mortgage was brought into existence. If defendants desired any special reply to be made, an order to that effect should have been sought and obtained from the Circuit Judge as provided for in Section 4907, C. G. L. *supra*. See Lovett vs. Lovett, 93 Fla. 611, 112 Sou. Rep. 768 and Turner v. Utley, 93 Fla. 910, 112 So. 837, for the rule obtaining in this connection.

All other points raised and urged by the appellant have been considered but a discussion of them is not deemed necessary. It is sufficient to state that no ground of reversal has been made to appear.

The findings of the master, which were approved by the chancellor, appear to be supported by the evidence, and under the oft reiterated rule followed by this court, the findings of the chancellor on the facts will not be disturbed by this Court unless shown to be clearly erroneous.

A decree in equity will be affirmed where it appears from the examination of an entire case that it has gone to final hearing and been decided upon the merits, and the errors complained of as to matters of pleading and procedure, have not resulted in the miscarriage of justice.

Lake Mabel Dev. Co. v. Bird, 99 Fla. 253, 126 So. 356; Day v. Weadock, 101 Fla. 333, 134 So. 525.

Decree affirmed.

WHITFIELD, P.J., AND TERRELL, J., concur.

BUFORD, C.J., AND ELLIS AND BROWN, J.J., concur in the opinion and judgment.