DREW, Justice.
Certiorari has been taken from an order of the lower court overruling motions to dismiss a complaint in equity for rescission and cancellation of a contract of purchase of all of the stock of the Key West Ice Company, Incorporated, for the sum of $75,000. Also involved in this appeal is the propriety of an injunction issued; by the lower court based on the allegations of the complaint, enjoining the defendants below from disposing of or in any way hy-pothecating or encumbering certain notes executed by the purchasers - of the stock as a part of the consideration therefor.
We shall refer to the petitioners here who were the defendants below, as the sellers, and the respondents here who were the plaintiffs below, as the purchasers.
On March 12, 1952, the purchasers entered into a sales agreement with the sellers for the purchase of all of the capital stock of the Key West Ice Company for the sum of $75,000. The agreement provided that the purchase price would be evidenced by fifteen notes for $1,000 each, the first five of which would mature April 17, 1952, the second five of "which would mature May 17, 1952, and the third five of. which would mature June 17, 1952, and twenty-four notes in the principal sum of $2,500 each, maturing as follows: six notes March 15, 1953, two notes June 15, 1953, six notes March 15, 1954, two notes June 15, 1954, six notes March 15, 1955, two notes June 15, 1955. The agreement provided that the notes should bear 6% interest. The agreement further provided for the purchasers to execute nine promissory notes payable monthly, beginning April 17, 1952, for $460 each, which represented prepaid rent on the ice plant. All of the foregoing notes were executed and delivered simultaneously with the agreement. The agreement further provided for escrowing the stock, notes and other documents and that the possession and control of the business would be taken over by the purchasers on the 16th of March, 1952. Other provisions contained in the agreement are of no material import in the determination of the issues here.
The purchasers assumed possession and control of the ice manufacturing business of the corporation on or about March 16th and continued to operate the business from that date forward, and were in possession and control of said business when the complaint for the rescission- and cancellation of the contract was filed in the court below on November 12, 1953,-more than-a year and a half later. The complaint seeks rescission and cancellation of the contract on the basis of certain false and fraudulent statements and acts of the sellers which may be generally summarized as follows :
1. That the net earnings of the company would pay off the notes as .they matured.
2. That the company was selling and had sold ice at $8 per ton.
3. That the plant was producing an average of 40 tons in 24 hours.
4. That the .plant was in good operating condition.
5. That a “statement of profit and loss’-' furnished the purchaser by the sellers at or before the signing of the agreement, was false and fraudulent and did not reveal the true financial status of the company.
- It is clear from the complaint that the purchasers discovered the fact that such alleged statements and acts were false and fraudulent within a very few days after they assumed possession, management and control of the business. The complaint contains an allegation with reference to the condition of the plant "as follows: “Said defendants, or one of, them, represented to the said plaintiffs that the plant of the ice company was in good operating condition. This statement was false and known by the defendants to be false in that the equipment of said plant was old, dilapidated, and worn out, and entirely incapable of profitable operation as evidenced by the fact that the plant broke down just one week to the *912 day after said plaintiff took over its operation with the same personnel as theretofore.” It is quite evident from the allegations of the bill as a whole that the other enumerated acts of alleged fraud and misrepresentation were known to the purchasers within a very short time after they took control and management of said business but nevertheless they continued in possession thereof for a period of more than 17 months during which time they spent some $29,000 in repairs and replacements to the property. As they became due the notes representing the prepaid rent as well as the notes representing the purchase price of the stock which matured through June 17, 1952, amounting to some $15,000, were paid by the purchasers. When the interest on the notes became due on September 17, 1952, the purchasers refused to pay the same because of the alleged fraud and as a result thereof new negotiations were entered into, certain interest was waived by the sellers, maturity dates were extended, and certain promises were made by the sellers with reference to financing certain' other financial obligations of the purchasers. The purchasers continued to operate -said business and some time thereafter, when demand. was made for the payment of certain matured notes, they instituted this proceeding for rescission and cancellation of the agreement and for a decree compelling the sellers to return to them all sums paid on said contract with interest.
In the case of Peacock Hotel, Inc., v. Shipman, 103 Fla. 633, 639, 138 So. 44, 46, we said in speaking of the right to rescind a transaction on the ground of fraud, etc., that:
“One possessing the right to rescind a transaction on the ground of fraud, misrepresentation, mistake, or other sufficient cause and desiring to exercise such right, must not be guilty of any unreasonable or unnecessary delay in the assertion of his purpose and in taking steps to make it effective, or he will be denied relief in equity on the ground that such delay is tantamount to a waiver of his objections to the transaction. Mizell v. Watson, 57 Fla. 111, 49 So. 149; Hirschman v. Hodges, 59 Fla. 517, 51 So. 550. See, also, Ansley v. Bank of Piedmont, 113 Ala. 467, 21 So. 59, 59 Am.St.Rep. 122.
“In the case at bar the purchaser went into possession of the property on May 17, 1929. The answer asking for the rescission and cancellation of the purchase contract was not filed until October 15, 1930, with no excuse whatsoever being offered for the delay.”
The principle of law enunciated by the late Justice Davis in the foregoing opinion has been adhered to without deviation by this Court in numerous cases since that time and we see no occasion to cite more than two recent cases of this Court along the same lines, viz.: the case of Street v. Bartow Growers, Processing Corp., Fla. 1953, 67 So.2d 228, and Taran Distributing, Inc., v.. Allen, Fla. 1953, 67 So.2d 686. In Street v. Bartow Growers [67 So.2d 231], which primarily involved certain misrepresentations as to the financial conditions of a corporation, we said: “Even if there were misrepresentations . contained in the financial statement, the appellees are now estopped to assert them. When the appel-lees first ascertained that there were ‘inaccuracies,’ they could have brought an action to rescind the contract. They failed to do so. At the time the appellees gave an accounting to the appellant * * * they may have had a right to assert their claims- because of the ‘inaccuracies’ of which they then had actual’ knowledge. This they failed to do. They waited until they had been in possession of the property and enjoying the fruits thereof for more than 18 months before they even attempted to assert any claim or to give any notice to the appellant that they had any claim.” We further said in that opinion: “the party claiming fraud, misrepresentation or deceit cannot sit idly by and wait until conditions suit him to put the other party on notice or to take action with reference' to rescission of a sales contract, or to claim damages because of a claimed inaccurate financial statement.”
*913 In the Taran Distributing case [67 So. 2d 687] we held: “Although the bill of complaint contains allegations of fraud and misrepresentation, such allegations are insufficient as a basis for rescission and cancellation without further allegations on the part of respondent in view of the fact that he had the machines in his possession several days prior to the execution of the contract, made one monthly payment on December 10, 1952 while still having the machines in his possession, and was six months in default before he brought his bill for rescission and cancellation.”
We have carefully analyzed the allegations of the' very long complaint in this cause and find that the case presented, taken in the light most favorable to the purchasers, is much weaker than any of the cases which we have cited herein and on which we held rescission and cancellation was not warranted. When the purchasers discovered the alleged false and fraudulent representations, ' it was their duty promptly to' take affirmative action in the matter. Iri the 'beginning and before the agreement to purchase- was entered into they may have been satisfied to have purchased the plant even had they known the existence of the true facts. When the purchasers learned these facts and failed to take action to protect themselves, their silence and inaction amounted to a waiver. This is especially true under the circumstances in this case where the sole operation and control of'the only asset of the corporation was at all times under their exclusive management and control.
Moreover, even if the remedy of rescission and cancellation had been available to the purchasers when the new negotiations took place, the new contract was a waiver of any claim based on the previous fraud. Harpold v. Stock, Fla. 1953, 65 So.2d 477. It is also quite apparent from the-record that the position of the parties as they existed prior to the contract could not be restored. It is seldom- that equity will grant rescission and cancellation under súfch conditions. See Steak House, Inc., v. Barnett, Fla. 1953, 65 So.2d 736.
The writ is granted and the challenged order is quashed.
THOMAS, Acting Chief Justice, and HOBSON and MATHEWS, JJ., concur.