TYPOGRAPHICAL SERVICE,
INCORPORATED,
Plaintiff-Appellant,

v.

ITEK CORPORATION, et al.,
Defendants-Appellees.

No. 82–6149
Non-Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

Dec. 27, 1983.

Brian C. Powers, West·Palm Beach, Fla., for plaintiff-appellant.

Rogers, Morris & Ziegler, Romney C. Rogers, Fort Lauderdale, Fla., for defendants-appellees.

Before GODBOLD, Chief Judge, RONEY and TJOFLAT, Circuit Judges.

GODBOLD, Chief Judge:

In this diversity action plaintiff Typographical Service, Inc. ("TSI") sued defendant Itek Corp. and alleged breach of contract, breach of warranty, breach of implied warranty of fitness for a particular purpose, and fraud. The suit arose from the sale of a typesetter to TSI by Dymo Graphic Systems, Inc., a corporate predecessor to Itek. TSI claimed that Itek failed to provide and deliver typefaces pursuant to the agreement or, alternatively, that the sale was induced by Itek's fraud.

TSI sought to recover the value of the machine and peripheral equipment as well as lost profits. Itek counterclaimed for goods and services for $14,725.70. After a bench trial the district court entered judgment for Itek on TSI's complaint, for Itek on its counterclaim against TSI for $14,725.70, and for Itek for $4,884.53 on its motion to tax prejudgment interest. TSI appeals and we affirm.

■ The district court did not err when it concluded that the sales contract constituted the entire agreement between the parties "without taking into account" usage of trade. Even if the parties intend that a writing be a final expression of their agreement, that writing may be explained or supplemented by usage of trade. *See* Fla. Stat.Ann. Sec. 672.2–202 (West 1966). The existence and scope of such usage are to be proved as facts. *See* Fla.Stat.Ann. Sec. 671.1–205(2) (West 1966). Together these sections recognize the admissibility of usage of trade to explain or supplement the writing. In this case the court admitted ample evidence of usage of trade. TSI complains of the trial court's failure to "take into account" usage of trade in finding that the sales contract was a final expression and that the agreement had not been breached. The record does not indicate that the trial court failed to consider this evidence in reaching its conclusions or that its conclusions, in light of the evidence, are clearly erroneous.

■ The trial court also erred, TSI contends, when it concluded that the plaintiff failed to make a timely rejection of the nonconforming goods because the proper issue before the court should have been whether the plaintiff properly revoked its acceptance of the goods. Thus TSI argues that Fla.Stat.Ann. Sec. 672.2–608 should have been, but was not, applied by the trial court. Section 2–608 allows a buyer to revoke acceptance if a nonconformity substantially impairs the unit's value to him if certain other requirements are met. The trial court refused to apply Sec. 2–608 because, it found, the requirement of substantial impairment was not met. We find no error in the application of this code section, and the court's finding of no substantial impairment is not clearly erroneous.

■ The district court did not err in excluding plaintiff's evidence of consequential damages. The court properly excluded documentary evidence not contained in TSI's pretrial stipulation. Local rule 14(c)(10) for the Southern District of Florida requires a party to list its trial exhibits in the pretrial stipulation, but the court in its discretion may admit documentary evidence not on the list. We find no abuse of discretion in the court's failure to admit certain of TSI's business records. The evidence was neither newly discovered nor related to any other previously admitted evidence. Second, TSI argues that the court erred in excluding oral testimony of lost profits. TSI maintains that the evidence was excluded because it did not establish the amount of lost profits with specificity. Although requiring absolute certainty as to amount of damages would be error, *see, e.g., Conner v. Atlas Aircraft Corp.,* 310 So.2d 352, 354 (Fla.Dist.Ct.App.), *cert. denied,* 322 So.2d 913 (Fla.1975), the trial court instead required merely a causal connection to tie the damages suffered to the machine and to assure that any damages flowed from the alleged breach: "I think you are going to have to tie it [lost profits] down to this machine in a more specific way than you are suggesting." While uncertainty as to the amount of damages suf-

fered will not defeat recovery, courts require more certainty in showing that lost profits flowed from the alleged wrongful conduct. *See Twyman v. Roell,* 123 Fla. 2, 166 So. 215, 218 (1936) ("The uncertainty which defeats recovery in such cases has reference to the cause of the damage rather than to the amount of it."); *see also National Papaya Co. v. Domain Industries, Inc.,* 592 F.2d 813, 818 (5th Cir.1979). The court did not abuse its discretion in excluding oral testimony of lost profits that lacked the specificity to tie those lost profits to the defendant's alleged breach.

▇▇ Next, we find no merit in the contention that the district court erred in denying recovery of consequential damages and in finding that the contract between the parties proscribed the recovery of consequential damages. Fla.Stat.Ann. Sec. 672.-2–719 allows limitation of remedy, but if the remedy fails of its essential purpose, then other remedies, including consequential damages, are available. Paragraph 8(c) of the sales agreement limits the remedy to "the repair or replacement of defective or non-conforming parts or units resulting from defective material or poor workmanship, which are returned to the plant." No evidence of defective workmanship or material exists in this case. In fact, the trial court concluded that the defendant complied with the contract by delivering operational equipment. This difference distinguishes the present case from *Burbic Contracting Co. v. Cement Asbestos Products Co.,* 409 So.2d 1 (Ala.1982), relied upon by the plaintiff. In that case the plaintiff alleged that defective pipes were not repaired or replaced pursuant to the limitation of remedy provision, which, if true, would have subjected the seller to the full range of UCC damages. That is, a limitation to repair or replace fails of its essential purpose if the seller does not provide goods that conform to the contract within a reasonable time. *See id.* at 5. The remedy could not fail of its essential purpose under the present facts because no defective material or workmanship was alleged and the clause was never invoked. The trial court thus correctly applied Sec. 2–719 to hold

that the contract validly proscribed consequential damages.

▇▇ The parties dispute whether the trial court's finding of no fraud in the procurement of the purchase agreement is clearly erroneous. Based on the knowledge and sophistication of the parties, the contents of the agreement, and the lack of any evidence of intent to deceive, the conclusion of the district court is not clearly erroneous. *See, e.g., Peacock Hotel, Inc. v. Shipman,* 103 Fla. 633, 138 So. 44, 46 (1931) (knowledge of parties relevant to finding of fraud); *Greenwald v. Food Fair Stores Corp.,* 100 So.2d 200, 202 (Fla.Dist.Ct.App.1958) (no relief for oral misrepresentation where specific points covered in contract).

▇▇ TSI next contends that the introduction of Dymo's invoices was improper as hearsay because requirements of the business records exception, *see* Fed.R.Evid. 803(6), to the hearsay rule were not met. This evidence was admitted without objection. By failing to object when the records were tendered or to conduct a cross-examination limited to their admissibility at that time, TSI waived any objection to their admissibility. After the records were admitted, TSI moved to strike them and contended that the custodian's testimony could not meet the foundational requirements of Rule 803(6). The inability of the Itek credit manager to testify to Dymo's record-keeping practices was obvious when Dymo's records were tendered, but TSI did not object. A motion to strike may be appropriate where relevant evidence is later proved irrelevant by failure to prove the conditional fact or dismissal of parties from the case, *see U.S. v. Parks,* 411 F.2d 1171 (1st Cir. 1969), but the motion is not a substitute for failure to object to an improper foundation under Rule 803(6) when the evidence is tendered.

▇▇ TSI objects to the award of interest to Itek by contending that the underlying sum is unliquidated. Although prejudgment interest cannot be awarded on unliquidated sums, the present amount was liquidated. Under Florida law a claim is

unliquidated when the amount of the damages cannot be computed except on conflicting evidence, inferences, and interpretations. *See Town of Longboat Key v. Carl E. Widell & Son,* 362 So.2d 719, 723 (Fla. Dist.Ct.App.1978). The invoices sent to TSI on an account stated basis reflected certain amounts and cannot be fairly characterized as unliquidated. TSI also asserts that the method of computing interest was incorrect. TSI contends that interest was charged on an invoice basis, which did not take into account credits and other adjustments to the bill. The accounting sheets furnished to the district court set out the cash invoices but recognize credits and adjustments. These credits or adjustments thereby reduce the amount of interest charged to TSI. The challenge to the calculation is without merit.

AFFIRMED.

Before GODBOLD, Chief Judge, RONEY and TJOFLAT, Circuit Judges.