JAMES D. GABLER, Appellant, *v.* ISAAC GOLDMAN COMPANY, Respondent.

First Department, January 15, 1926.

Trial — action to recover commissions — verdict for plaintiff against evidence — court did not have power after setting aside verdict to direct verdict for defendant in absence of jury.

In an action by a salesman to recover commissions on goods sold, the evidence does not support the verdict rendered by the jury in favor of the plaintiff, and the trial court properly set the verdict aside.

But while it was proper for the trial court to set the verdict aside, it did not have the power thereafter in the absence of the jury, to direct the verdict in favor of the defendant.

APPEAL by the plaintiff, James D. Gabler, from a judgment of the Supreme Court in favor of the defendant, entered in the office

of the clerk of the county of New York on the 16th day of February, 1925, upon the direction of a verdict by the court in the absence of the jury after its verdict for the plaintiff had been set aside.

*Rifkind & Reilley* [*Thomas T. Reilley* of counsel; *Albert J. Rifkind* and *Lewis Bassiano* with him on the brief], for the appellant.

*Samuel Wasserman* [*Joseph I. Green* of counsel; *William Macy* with him on the brief], for the respondent.

MARTIN, J. This is an action by a salesman against his employer to recover for services rendered and commissions. The complaint contains two counts, one on *quantum meruit* and the other on agreements as to compensation. At the trial the case finally narrowed down to the issue whether plaintiff was to receive in full a certain service charge of five per cent paid by the customers on the amounts of their orders, or whether he was to receive but half of it, the other half to go to the defendant.

According to plaintiff he refused to accede to a change in the terms of his employment by which he would be credited with only half of the service charge on each order, but, nevertheless, defendant's representative said it would take half and allow plaintiff but half. The testimony for defendant is that plaintiff agreed to such division. The plaintiff testified that each time he received a statement crediting him with but one-half the service charge, he disputed the division. Upon the trial several estimates for work were offered in evidence, on which appeared " service 50–50." To the right of these words and figures in each of these exhibits the full amount of the service charge will be found. The plaintiff testified that he did not write the figures " 50–50." The defendant's witnesses testified that he did.

The court took the position that the determination of the issue depended upon whether the plaintiff wrote these figures " 50–50," saying: " The real question, so far, is as to whether that ' 50–50 ' is in his handwriting or not. *If it is, that settles this case.* If I were you I would concentrate on that." (Italics are the writer's.)

The plaintiff's counsel then stated: " Your Honor called particular attention that this whole question revolved around the fact whether the figures ' 50–50 ' were written by Mr. Gabler. I will stand or fall on that. If these figures ' 50–50 ' were written by Mr. Gabler, I will withdraw. I will discontinue."

In the charge, referring to the writing of " 50–50," the court said: " There is nothing more important in this case than that. * * * This man writes a very plain hand, and yet a distinctive hand, and I feel that you can tell by an examination of these papers themselves whether or not he is telling the truth."

The plaintiff was asked if Exhibit C was in his handwriting. He said: " Yes, that is mine." It was thereupon offered in evidence. This paper contains the words " Service 50–50." When confronted with this exhibit, the plaintiff denied that the " 50–50 " was in his handwriting. He was then interrogated on cross-examination as follows: " Q. You put a service charge there in September, 1921, didn't you? A. I didn't see ' 50–50 ' on there. * * * Q. It is on there, isn't it? A. It is on there. By the Court: Q. Did you write it? A. Not to my recollection. Q. Well, now, you know your own handwriting; is it your handwriting? A. It looks like my handwriting, your Honor."

And again: " Q. You notice opposite the $260 appear the words and figures ' 50–50 Service.' Whose handwriting is that? A. I don't know. * * * Q. You say you did not write that in there? A. I did not write the ' 50–50 ' in there. I wrote ' service '. * * * By the Court: Q. That was a 50–50 charge? A. Yes, sir. * * * Q. You accepted it? A. I signed it and objected to it."

It appears from the exhibits that in one sentence, which is incomplete without the figures " 50–50," the plaintiff admitted having written all but those figures. At one time he admitted having written the entire notation " Service 50–50," but afterwards denied writing it.

The evidence of the defendant, together with the exhibits, clearly warranted the judge in setting aside the verdict for plaintiff as against the weight of the evidence. The difficulty, however, is that the court then proceeded, in the absence of a jury, to direct a verdict for the defendant upon the theory that the case should not have been submitted to the jury. The court, by permitting the case to go to the jury, was thereafter without power to direct a verdict for the defendant on setting aside that rendered by the jury for plaintiff.

Although the court may in a proper case reserve decision on a motion to dismiss the complaint until the case is submitted and passed upon by the jury (*Bail* v. *N. Y., N. H. & H. R. R. Co.,* 201 N. Y. 355, 357) the court may not then direct a verdict for either party, especially in the absence of the jury.

In *Matter of Continental Guaranty Corp.* v. *Craig, No. 1* (212 App. Div. 236, 243; revd., 240 N. Y. 354, on another point) the court, by Mr. Justice DOWLING, said: " In so far as the learned trial court undertook to direct a verdict for defendants, he was without power so to do. The order for a directed verdict was not made until the next term of court following that at which the case was tried. The verdict of the jury was a general, not a special

one. No jury was present, nor was a verdict ever rendered by a jury as directed by the court. This constitutes a fatal defect.

"In *Gilbert* v. *Finch* (72 App. Div. 38; affd., 173 N. Y. 455) Mr. Justice McLaughlin said: 'A verdict contemplates, and necessarily involves, the presence of both court and a jury, and whenever it is directed it is absolutely necessary that both be present. There can, from the very nature of things, be no such thing as a verdict directed unless both the court and jury are present, because in such verdict there is involved an order by the court and an execution of the same by the jury. Once a jury has been discharged, the court has no power to direct a verdict, because there is not only no one to direct, but no one to execute the direction. Therefore, the exception taken to the direction in this case would, in and of itself, necessitate a reversal of the judgment appealed from, were it not for the fact that it was conceded upon the argument before us that the objection made and exception taken were not directed to the practice adopted; and in connection with this concession, a request was made on the part of counsel for both of the parties that the error be overlooked and the case decided upon the merits.'

"No such request is made in the present case, and the exception taken sufficiently raises the question."

A verdict in favor of the plaintiff having on defendant's motion been set aside after the jury had separated, and judgment entered upon a verdict then directed by the court in favor of the defendant, the judgment should be reversed and a new trial ordered, with costs to the appellant to abide the event.

Clarke, P. J., Merrell, Finch and Burr, JJ., concur.

Judgment reversed and new trial ordered, with costs to the appellant to abide the event.