BOND ELECTRIC CORPORATION, a Corporation Organized under the Laws of the State of Delaware, Appellant, Respondent, *v.* GOLD SEAL ELECTRIC Co., INC., a Corporation Organized under the Laws of the State of Delaware, and Another, Respondents, Appellants.

First Department, April 12, 1935.

*Herman Aaron* of counsel [*Charles Adkins Baker* with him on the brief; *Parker & Aaron,* attorneys], for the plaintiff.

*Harry J. Gluskin* of counsel [*Howard E. Sandman* with him on the brief; *Hartman, Sheridan, Tekulsky & Pecora,* attorneys], for the defendants.

TOWNLEY, J. This action was brought for damages for breach of warranty of quality of a large number of radio tubes. The total contract price for the amount of goods delivered was $382,257.69. There was an unpaid balance of $84,752.66. The complaint was framed for damages in excess of the value of all the tubes delivered. The jury brought in a verdict for $10,500 in favor of the plaintiff and against the defendants on the counterclaims which were respectively for the balance due for the amount delivered and for damages for failure to take delivery of a balance of tubes.

The verdict was rendered and the jury was discharged on November 10, 1933. A decision was made in January, 1934, purporting to set aside a verdict in favor of plaintiff and directing a verdict in favor of defendants on the first counterclaim in the absence of a jury and without a stipulation by plaintiff consenting thereto. No order was entered thereon but the parties to the appeal have assumed the existence of such an order. Assuming that such an order had been entered, under the conditions stated, the direction of the verdict on the first counterclaim was without authority. (*Gabler* v. *Goldman Co.,* 215 App. Div. 333.)

The contract required the defendants to deliver radio tubes of uniform quality equivalent or better than RCA and Cunningham tubes. There is abundant evidence in the case that the tubes delivered to the plaintiff did not meet that requirement. In fact, this was practically admitted by the defendants. The tubes lacked uniformity, which was an important element under the contract, and were defective in a number of other respects. The proof established without substantial contradiction that the process adopted by the defendants in the manufacture of the tubes was bound to produce an uneven product lacking in the exactness of detail required to produce uniform and efficient tubes. The evidence established that while the percentage of defective tubes in shipments of RCA tubes was approximately two per cent, in the shipment of 550,000 tubes involved in this case admittedly some 55,000 were properly rejected and returned to the defendants. In addition there was ample evidence that many thousands more were defective. One expert testified on behalf of the plaintiff that out of a lot of tubes examined by him over eighty per cent were defective. It may be taken as established, therefore, that the defendants failed to perform their contract.

In *Hooper* v. *Story* (155 N. Y. 171) the Court of Appeals said that in a breach of warranty case the measure of damages is the difference between the value of the article as represented by the warranty and its actual value. The court added: " This is the well-settled rule and the defendants had the right to avail themselves of their remedy under the plaintiffs' agreement of warranty, by way of counterclaim when sued for the price. But they were bound to give evidence of the actual value of the machine and that is their difficulty in the case as presented by this record."

To carry this burden plaintiff offered testimony of experts who had dealt in defendants' tubes in 1929 at the time of these deliveries. Hypothetical questions were put to them as to the value of tubes such as had been technically described at the trial. The experts were properly qualified. The evidence given was competent and credible. The jury weighed the testimony and made what allowance they thought proper. The resulting verdict was amply supported by the testimony.

Defendants urge, however, that the verdict for plaintiff cannot be reinstated because of an error in the court's charge. Over exception, the court charged: " As to the first counterclaim, if you find a verdict in favor of the plaintiff in the case brought by the plaintiff, then your verdict in the counterclaim should be in favor of the plaintiff." Defendants urge that this was error because although the plaintiff could recover damages for breach of contract of warranty, if proved, the defendants must nevertheless recover the undisputed unpaid balance of the purchase price as demanded in the counterclaim. In the ordinary action for breach of warranty the point might be well taken, but defendants overlook the form of the present complaint. Plaintiff was not suing to recover damages generally for breach of warranty but for damages *in excess of the value of all the tubes delivered*. The contract value of the tubes for which claim is made in the first counterclaim was, therefore, necessarily included in the number of tubes whose worth was evaluated by the jury. If the jury found for plaintiff, there could be no verdict on the first counterclaim. The charge was correct.

The judgment should be reversed, with costs to plaintiff, and judgment should be entered on the verdict in the sum of $10,500, and in favor of plaintiff on both counterclaims, with costs.

MARTIN, P. J., MERRELL, GLENNON and UNTERMYER, JJ., concur.

Judgment reversed, with costs to the plaintiff, and judgment directed to be entered on the verdict in the sum of $10,500, and in favor of the plaintiff on both counterclaims, with costs. Settle order on notice.