Vitromar Piece Dye Works, a Corporation, Plaintiff-Appellant, v. Lawrence of London, Ltd., a Corporation, Defendant-Appellee.

Gen. No. 53,204.

First District.

December 31, 1969.

Rehearing denied February 19, 1970.

CRAVEN, J., dissenting.

Weiss, Weiner, Levine and Swiedler, Simon & Ingram, of Chicago (Ernest Swiedler, Robert B. Simon and John D. Ingram, of counsel), for appellant.

McDermott, Will & Emery, of Chicago (Hamilton Smith and James E. Betke, of counsel), for appellee.

TRAPP, P. J.

Upon trial before the court on a complaint and counterclaim concerning a contract for processing material, the court entered judgments for the defendant as to the complaint and for the plaintiff-counterdefendant upon defendant's counterclaim. Plaintiff appeals.

The record brought to this court contains only the pleadings, the judgment of the trial court and the recorded comments of the trial court on entering judgment.

The complaint alleged that by written contract, plaintiff agreed to waterproof 13,789¾ yards of material furnished by defendant to plaintiff for a price of 32 cents per yard, or a total price of $4,630.70, that the goods were processed by plaintiff, returned to defendant and retained by defendant, and that payment had not been received. The answer admitted the foregoing, but alleged that by written contract plaintiff had agreed to waterproof silk cloth in accordance with sample furnished by plaintiff to defendant, that plaintiff failed to waterproof in the manner it agreed to, that plaintiff caused the silk cloth to become tacky and as a result defendant sustained damage. The reply denied the affirmative matter alleged in the answer. Defendant, by a second amended counterclaim, sought damages for additional processing costs incurred in an attempt to eliminate tackiness, additional labor costs on account of working with tacky material, losses attributable to unusable material, losses attributable to sale of coats at less than normal prices, and inability to sell some coats at all, which damages were alleged to be $15,252.20.

The trial court's comments at the time of entry of the judgments were:

"The court finds that the work was not done in accordance with the sample and in a good and workmanlike manner.

"The court further finds that the goods were returned to the defendant and most of it sold to regu-

302

lar customers and some of it for the regular price. The defendant never paid plaintiff for the work done because of the quality of the work. The counterplaintiff has failed to meet the burden of proof as to damages on the counterclaim."

Both parties apparently agree that the matter is to be determined by the law of New York. The plaintiff asserts that the transaction is governed by Uniform Commercial Code, and cites sections 2-606, 2-709(1)(a) and 2-607(4).

Section 2-606(1)(a) provides:

"(1) Acceptance occurs when the buyer (a) after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their non-conformity;"

Section 2-607 provides, (in part):

"(1) The buyer must pay at the contract rate for any goods accepted.

"(2) Acceptance of goods by the buyer precludes rejection of the goods accepted and if made with knowledge of a non-conformity cannot be revoked because of it unless the acceptance was on the reasonable assumption that the non-conformity would be seasonably cured but acceptance does not of itself impair any other remedy provided by this Article for non-conformity.

"(3) Where a tender has been accepted (a) the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy; and . . . .

"(4) The burden is on the buyer to establish any breach with respect to the goods accepted."

The plaintiff who performed the services under the contract on property of the defendant takes two positions which he says require a reversal of the judgment as a matter of law.

First, plaintiff contends that plaintiff is a "seller" under the Uniform Commercial Code, and that under New York law a claim of breach of warranty is not a defense to an action on the contract for the price but is strictly a counterclaim, and that having lost the suit on the counterclaim after "acceptance" of the goods, defendant has no offset to the full price.

Second, plaintiff contends that the trial court found that the defendant "did not and could not prove any damages whatsoever sustained by it as a result of plaintiff's processing of its goods." Accordingly, having "accepted" the goods, defendant is liable for the contract price.

In support of the first contention, plaintiff cites Nash v. Weidenfeld, 41 App Div 511, 58 NYS 609 (1899). This case does not go as far as plaintiff contends. We do not think that it precludes nonconformance to contract as a defense when complaint is made in apt time. The court excluded evidence of nonconformity because it had not been pleaded in the answer. The court said, p 514:

> ". . . and the rule is settled that where there is an executory contract for the sale and delivery of personal property, the remedy of the vendee to recover damages on the ground that the article furnished does not correspond with the contract does not survive the acceptance of the property after an opportunity to ascertain the defect. . . . It is quite apparent in this case that the materials furnished were received by the Worcester Cycle Manufacturing Company. *It does not appear that any complaint was ever made, or that any notice was ever given*

304

*to the vendor of the defects, or that any offer was made to return the property. For that reason, the answer was entirely insufficient as a defense."* (Emphasis supplied.)

In Hunter v. Finnerty, 119 Misc 724, 197 NYS 215, also cited by plaintiff, the court there said on p 216:

"The evidence shows that defendants did not reject the car, and never actually rescinded the contract to purchase the same. This being so, *they had the remedies provided for a breach of the warranty: viz. to recoup in diminution or extinction of the purchase price, or to maintain an action against the plaintiff for their damages."* (Emphasis supplied.)

The third case cited by plaintiff, Bond Elec. Corp. v. Gold Seal Elec. Co., 244 App Div 206, 278 NYS 969, rev 271 NY 461, 3 NE2d 594, holds that the measure of damages for breach of warranty is the difference in value of the goods received and the value of the product warranted which is set off against the purchase price. That case arose on instructions to the jury.

We do not find anything in the New York decisions cited which would prevent the assertion of a defense that the goods did not meet the warranted sample if the buyer within a reasonable time after discovery of the defect notifies the seller notwithstanding acceptance. This is consistent with Uniform Commercial Code, § 2–607(3)(a), which says that where the goods are accepted, then in the absence of notice of defect in a reasonable time buyer is barred from any remedy. The inference is that upon giving notice in a reasonable time, the buyer is not barred from his remedy.

We also agree that if it applies, § 2–607(4) places the burden of proof of breach in such case upon the buyer.

Without a transcript of proceedings at trial, or a stipulation of facts, we do not know what the evidence

showed as to prompt notice of the defects alleged, or as to the amount of damage.

The only basis for reversing the judgment upon this record would be to hold that, notwithstanding prompt notice of the defect, defendant could not assert lack of performance of the contract to furnish in accordance with sample as a defense to an action on the contract for the price. We do not so hold.

The second contention of plaintiff that the trial court found defendant suffered no damage whatsoever is not in accordance with the quoted statement of the trial court. The court said most of it (the goods) was sold to regular customers, and some of it for the regular price. It is certainly a clear inference that some of the goods were not sold to regular customers. It is certainly clear that some (with no indication of the greater or lesser part) was sold at less than the regular price. No indication is given to us from the court's statement as to what the resulting difference was. There is nothing before us as to the regular price, the actual sale price, or the total quantities involved in each case. In any event, we do not consider this to be a finding that defendant suffered no damage whatsoever, but rather the contrary.

It is argued that by finding that defendant failed to sustain the burden of proof as to damages on the counterclaim, the trial court found no damage existed. We may concede, arguendo, that the court could not enter a judgment for money in favor of the defendant against the plaintiff unless it also found that the damage from breach of warranty exceeded the purchase price. The type of damage which might be proved on a counterclaim might be different from that used in diminution or extinction of the claim for the price. There is nothing to show that the court would not have been justified in finding that the damages from failure to meet sample equalled the price. This is not a case of a simple sale of goods. Defendant had a cost in its own goods

which were processed by plaintiff and again processed as raincoats by defendant, prior to sale. We have no basis, without the evidence heard by the trial court, for saying that sale of some of the coats at less than regular price could not have equalled the contract price of waterproofing.

Defendant contends that the Uniform Commercial Code does not apply because plaintiff did not sell defendant any property, but, in fact, processed defendant's property. Plaintiff argues that in any event the principles of the Uniform Commercial Code should apply. We are inclined to agree in general principle with both parties. Article 2 of the Uniform Commercial Code is basically a reenactment, modification and expansion of the Uniform Sales Act. It is generally dealing with sales and not service contracts. Section 2–601 refers to rejection of the whole, acceptance of the whole or acceptance of a commercial unit. Section 2–602(2)(a) says that any exercise of ownership by the buyer after rejection is wrongful as against the seller. Section 2–602(2)(b) requires the buyer to hold with reasonable care subject to seller's disposition. Other sections were framed upon the theory of a sale of property originally owned by the seller.

Here, the physical cloth belonged to the "buyer" and was then processed by the "seller." Retention of the article by one who already owns it does not have the same significance of "acceptance" as retention of another's property. We note, however, under Uniform Commercial Code Comment, Ill Ann Stats, c 26, § 1–102, p 10, that courts have recognized the policies embodied in the Uniform Acts as applicable in reason to subject matter which was not expressly included in the language of the Act.

The court's denial of judgment on the counterclaim does not automatically prevent judgment for defendant on plaintiff's claim. The defendant is not precluded by

law from using damages arising from failure to perform according to contract sample in diminution or extinction of a contract price. The trial court had before it the contract's provision:

"6. In the event that after Processing Material, it contains any defects (other than an occasional spot or two in the piece or lot) you will make no charge for your services and you will supply new goods of like quality, construction and color and process them, charging only for the processing."

It does not appear that the defendant undertook to enforce the provision for replacement of material. In the absence of a record of the evidence considered by the trial court we have no basis upon which to question the trial court's action where some damage has been indicated. The contract does contemplate that there will be no charge if the processing ". . . contains any defects. . . ."

The judgments of the trial court are affirmed.

Affirmed.

SMITH, J., concurs.

CRAVEN, J., dissents.

CRAVEN, J., dissenting.

I cannot agree with the majority opinion which decides this case on the basis of the provisions of the Uniform Commercial Code which became effective in New York September 27, 1964, and if applicable, would govern this case. Article 2 of the Uniform Commercial Code is basically a reenactment, modification and expansion of the Uniform Sales Act in New York as the majority opinion states. Section 2–105 of that Code, defining "goods," and section 2–106, defining a "sale," do not in their language

308

include work or service on an article where the sale is incidental only to the service or work product.

In Perlmutter v. Beth David Hosp., 308 NY 100, 123 NE2d 792 (1954), in construing the Uniform Sales Act, plainly held that "sale" and "transfer" are not synonymous and not every transfer of personal property constitutes a sale, citing Halsted v. Globe Indemnity Co., 258 NY 176, 179 NE 376, 377. That case pointed out that when service predominates and the transfer of personal property is but an incidental feature of the transaction, the transaction is not a sale within the Sales Act.

This interpretation has been followed in the only cases thus far decided under these sections of the Uniform Commercial Code. In the case of Lovett v. Emory University, Inc., 116 Ga App 277, 156 SE2d 923 (1967), the Court of Appeals of Georgia held that the furnishing of blood by a hospital for transfusion to a patient is incidental to the service provided in the course of treatment and is not a sales transaction covered by the provisions of the Code as to breach of implied warranty. Likewise, in Newton v. Allen, 220 Ga 681, 141 SE2d 417 (1965), a lease of workable timber for turpentine was held not a sale of the turpentine itself so as to be the subject of the provisions of the Uniform Commercial Code, but was a sale of real estate.

If a contract to paint a picture is a contract for work, labor and services rather than a sale, even though the title to the canvas is transferred to the customer (Racklin-Fagin Const. Corp. v. Villar, 156 Misc 220, 281 NYS 426), the work done in the instant case on the plaintiff's material could not have been a sale within the meaning of the Uniform Commercial Code.

For the reason that the provisions of the Uniform Commercial Code are improperly applied to this case by the majority opinion, I am of the opinion that the majority is in error and that the cause should be re-

309

versed and remanded with directions to enter judgment in favor of the plaintiff on the original complaint.

The defendant cross-appealed but has not elected to pursue its appeal. There is thus no reason to discuss the apparent inconsistencies in the findings.