464 So.2d 626 (1985)
FOTOMAT CORPORATION OF FLORIDA, Etc., Appellant,
v.
Joseph J. CHANDA, Appellee.
No. 83-1756.
District Court of Appeal of Florida, Fifth District.
February 28, 1985.
*627 Stewart B. Capps of Nohrr, Nohrr, Boyd, Brushwood, Howze & Ellis, P.A., Melbourne, for appellant.
R. Frazier Solsberry of Nabors, Potter, McClelland, Griffith & Jones, P.A., Melbourne, for appellee.
ORFINGER, Judge.
The defendant appeals from a final judgment awarding damages of $9,500 to plaintiff, resulting from the loss of film which plaintiff had delivered to defendant for processing. We reverse.
Plaintiff Chanda, a medical doctor, after reading a magazine article indicating that the deterioration of movie film could be avoided by transferring the images on the film to videotape, and having read a flyer distributed by defendant which advertised the availability of such service, delivered 28 rolls of already developed Super-8 movie film to one of defendant's outlets in Melbourne, Florida in April of 1980. Defendant's clerk prepared an order form which contained information necessary to identify the customer, type of film and type of videocassette ordered, and other matters incidental to the transaction, and which also contained in a conspicuous place on the sheet and in bold type, the following language:
IMPORTANT
THE WARRANTY BELOW GIVES YOU SPECIFIC LEGAL RIGHTS AND LIMITATIONS. PLEASE READ IT CAREFULLY.
By depositing film or other material with Fotomat, customer acknowledges and agrees that Fotomat's liability for any loss, damage, or delay to film during the processing service will be limited to the replacement cost of a non-exposed roll of film and/or a blank cassette of similar size. Except for such replacement, Fotomat shall not be liable for any other loss or damage, direct, consequential, or incidental, arising out of customer's use of Fotomat's service.
________________ Customer Signature
Dr. Chanda read this clause, asked the clerk about it, and then signed it.
The film was lost and never made its way back to the plaintiff. Despite every effort on the part of defendant to locate it, it was never found nor could anyone account for its disappearance. Dr. Chanda testified that the film was of great sentimental value to him and to his family because *628 it contained depictions of his honeymoon, the graduation ceremony at his medical school, movies of his son's birth and early life, and many memorable vacations which he and his wife had taken. In proving his damages, he was permitted to testify, over objection, on how much time and expense would be involved in duplicating so much of the lost film as was capable of duplication. This claim included travel expenses, lodging, meals, child care for his two children at home, and the overhead expense he would incur in his medical practice while he was away.
At an in-camera hearing prior to the commencement of the jury trial, the court determined that the limitation of liability clause was unconscionable at the time it was made. See section 672.302, Florida Statutes (1981). At the conclusion of the evidentiary portion of the trial, the court instructed the jury to disregard the loss limitation provision of the agreement in arriving at their verdict. Defendant contends that the trial court erred in permitting evidence as to plaintiff's consequential damages, and in its ruling that the limitation of liability clause was invalid as unconscionable. Because we agree that the court erred in holding the limitation of liability provision to be invalid, we need not discuss the damage issue.
Florida has adopted the Uniform Commercial Code in dealing with commercial transactions. Section 672.2-302 of the Florida Statutes (1979) states:
(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.
(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.
The code does not attempt to define "unconscionability."[1] Consequently, those courts which have dealt with the problem have often looked to the common law of their respective jurisdictions because, in most, this code provision is, in reality, a codification of the common law rules. In the seminal case of Williams v. Walker-Thomas Furniture Company, 350 F.2d 445 (C.A.D.C. 1965), the court was faced with a contract entered into before the adoption by Congress of the Uniform Commercial Code for the District of Columbia, but decided after its adoption. First determining that the code provision followed the common law of the District, the court discussed unconscionability in terms of its elements:
Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party. Whether a meaningful choice is present in a particular case can only be determined by consideration of all the circumstances surrounding the transaction. In many cases the meaningfulness of the choice is negated by a gross inequality of bargaining power. The manner in which the contract was entered is also relevant to this consideration. *629 Did each party to the contract, considering his obvious education or lack of it, have a reasonable opportunity to understand the terms of the contract, or were the important terms hidden in a maze of fine print and minimized by deceptive sales practices? Ordinarily, one who signs an agreement without full knowledge of its terms might be held to assume the risk that he has entered a one-sided bargain. But when a party of little bargaining power, and hence little real choice, signs a commercially unreasonable contract with little or no knowledge of its terms, it is hardly likely that his consent, or even an objective manifestation of his consent, was ever given to all the terms. In such a case the usual rule that the terms of the agreement are not to be questioned should be abandoned and the court should consider whether the terms of the contract are so unfair that enforcement should be withheld. (Footnotes omitted).
Id. at 449-450.
Florida has long recognized the principle that the courts are not concerned with the wisdom or folly of contracts, Duvall v. Walton, 107 Fla. 60, 144 So. 318 (1932), but where it is perfectly plain to the court that one party has overreached the other and has gained an unjust and undeserved advantage which it would be inequitable to permit him to enforce, a court will grant relief even though the victimized parties owe their predicament largely to their own stupidity. Peacock Hotel, Inc. v. Shipman, 103 Fla. 633, 138 So. 44 (1931). Decisions in Florida since the adoption of the Uniform Commercial Code appear to follow the principles espoused in the earlier cases.
In Kohl v. Bay Colony Club Condominium, Inc., 398 So.2d 865 (Fla. 4th DCA), review denied, 408 So.2d 1094 (Fla. 1981), the court reviewed the authorities on the subject and concluded that:
The authorities appear to be virtually unanimous in declaring (or assuming) that two elements must coalesce before a case for unconscionability is made out. The first is referred to as substantive unconscionability and the other procedural unconscionability.
* * * * * *
A case is made out for substantive unconscionability by alleging and proving that the terms of the contract are unreasonable and unfair.
* * * * * *
Procedural unconscionability, on the other hand, speaks to the individualized circumstances surrounding each contracting party at the time the contract was entered into. This is thoughtfully discussed by the court in Johnson v. Mobil Oil Corp., 415 F. Supp. 264, 268 (E.D. Mich. 1967):
The various factors considered by the courts in deciding questions of unconscionability have been divided by the commentators into "procedural" and "substantive" categories. See J. White & R. Summers, supra, at 118-30. Under the "procedural" rubric come those factors bearing upon what in the Weaver case was called the "real and voluntary meeting of the minds" of the contracting parties: age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, whether alterations in the printed terms were possible, whether there were alternative sources of supply for the goods in question. The "substantive" heading embraces the contractual terms themselves, and requires a determination whether they are commercially reasonable. According to J. White & R. Summers, supra, at 128:
Most courts take a "balancing approach" to the unconscionability question, and to tip the scales in favor of unconscionability, most courts seem to require a certain quantum of procedural plus a certain quantum of substantive unconscionability.
*630 Id. at 867-68. See also, Bennett v. Behring Corp., 466 F. Supp. 689, 696 (S.D.Fla. 1979).
This court has approved the "procedural-substantive" analysis in determining the question of unconscionability, and has approved Kohl. State v. De Anza Corporation, 416 So.2d 1173 (Fla. 5th DCA), review denied, 424 So.2d 763 (Fla. 1982). Although rejecting the notion that the Kohl analysis is a rule of law, the court in Steinhardt v. Rudolph, 422 So.2d 884 (Fla. 3d DCA 1982), review denied, 434 So.2d 889 (Fla. 1983), found it "generally helpful" and applied it to the facts of that case. The Steinhardt court nevertheless recognized the long standing principle of law that:
All of this does not mean, however, that a court will relieve a party of his obligations under a contract because he has made a bad bargain containing contractual terms which are unreasonable or impose an onerous hardship on him. Indeed, the entire law of contracts, as well as the commercial value of contractual arrangements, would be substantially undermined if parties could back out of their contractual undertakings on that basis. "`People should be entitled to contract on their own terms without the indulgence of paternalism by courts in the alleviation of one side or another from the effects of a bad bargain. Also, they should be permitted to enter into contracts that actually may be unreasonable or which may lead to hardship on one side. It is only where it turns out that one side or the other is to be penalized by the enforcement of the terms of a contract so unconscionable that no decent, fairminded person would view the ensuing result without being possessed of a profound sense of injustice, that equity will deny the use of its good offices in the enforcement of such unsconscionability.'" (Citations omitted). (Emphasis added).
Id. at 890.
Applying the substantive prong of the test here, it cannot be said, as a matter of law, that the limitation clause here was unreasonable, when viewed in its commercial setting and when considering its purpose and effect. The charge for the processing service here was $31.00. The videocassette was priced at $18.95, and there was an additional $2.00 charge for an item not identified. There was unrebutted defense testimony that the limitation of liability provision was standard in the industry because, although loss and damage of film was relatively low in view of the tremendous volume of work done, no film processor would expose itself to liability for the unknown content of film without having to so greatly increase the cost to the public as to price the service out of the market. This is clearly a commercially reasonable consideration. As one court has aptly put it,
To put the company ... in that type of situation in which it rides every tiger that a person with a camera can imagine and carry out seems to be unconscionable. That is not to say that this limitation of liability is a perfect one, but it seems a fairly reasonable one.
Aetna Casualty & Surety Co. v. Eastman Kodak Co., District of Columbia Superior Court, 10 U.C.C.Rep.Serv. 53 (1972).
Other courts have examined similar limitation clauses in film transactions and have refused to declare these provisions unconscionable. In a commercial film transaction, the court in Posttape Associates v. Eastman Kodak Co., 450 F. Supp. 407 (1978) (E.D.Pa. 1978) considered a clause similar to the one here, and commented:
It is the "unknown or undeterminable risks" which justify the utilization of a limitation in the film industry. Not only are the risks difficult to access because of the latent nature of any film defect, but also because usually the seller is not aware of the scope of the commercial film maker's undertaking.
Id. at 412. The same principle has been applied in cases where the work was noncommercial, as where an amateur photographer leaves his vacation films with a photo supply shop for processing. Carr v. *631 Hoosier Photo Supplies, Inc., 441 N.E.2d 450 (Ind. 1982).
The reasonableness of the clause is demonstrated by the huge loss claimed by Dr. Chanda, compared to the cost of the service. Without a doubt the film had peculiar value to the plaintiff. Some of it was irreplaceable and all of it was of great sentimental value, but that unknown "tiger" is the very reason for the inclusion of the limitation of liability provision in the transaction. There is no way the processor can conceive of the risk it takes in accepting film for processing absent an explicit agreement to accept such risk. When the customer is made aware of the provision for limitation of liability and nevertheless proceeds with the transaction he has assented to an agreement for which there is a commercial need, if the cost of the service is to be made reasonable.
Neither can we perceive that plaintiff satisfied the procedural prong of the test. The evidence reflects that Dr. Chanda saw and read the clause in question, asked a question about it and was apparently satisfied with the answer because he signed it. He had previously suffered the loss of film at a different place of business, and it had been replaced by new film. He was a doctor, well educated, experienced in business transactions, and well aware of what he was signing. While he was given no opportunity to negotiate the terms of this agreement, he did not attempt to determine if anyone else could provide this service. Thus the evidence falls short of showing procedural unconscionability. If, as indicated by the official comment to Section 2-302 of the Uniform Commercial Code, the principle involved in the section "is one of the prevention of oppression and unfair surprise ... and not of disturbance of allocation of risks because of superior bargaining power," no such oppression or unfair surprise is shown here.
Appellee's reliance on Mieske v. Bartell Drug Co., 92 Wash.2d 40, 593 P.2d 1308 (1979) is misplaced. Although the scenerio in that case is much like the one here, there is one very salient and important distinction. In Mieske, the plaintiff's wife, who brought the already developed film to the drug store for splicing and placing onto larger reels, was given a receipt for the film which contained a brief limitation of liability clause. It was not called to her attention nor discussed, she was not aware of it, and she had had no prior experience with or knowledge of any custom of the trade to include such provision in film transactions. The clerk who accepted the film did not recall discussing the clause with her, nor was he even sure what it meant. The court found that:
As to course of dealings, the record is clear that Mrs. Mieske and the Bartell manager never discussed the exclusionary clause. Mrs. Mieske had never read it, she viewed the numbered slip as merely a receipt. The manager was not "too clear on what it said." There was no showing what was the language on any other receipt given in prior dealings between the parties. In summary, defendants' proof fell short of that required by the express language of [the statute].
Id. at 1313.
It is clear from the record here that the trial court refused to consider and apply the procedural/substantive test to determine the issue of unconscionability. Neither was any other objective analysis applied, but instead, the court appeared to view the unfairness of the agreement in retrospect, because of the result. The contract should have been reviewed in the light of the circumstances that existed when it was made. The judgment for plaintiff is reversed, and the cause is remanded to the trial court with directions to enter judgment for plaintiff for the cost of 28 rolls of unexposed Super-8 movie film.
REVERSED and REMANDED.
COWART, J., and POWELL, R.W., Associate Judge, concur.
NOTES
[1] Text writers have pointed up the lack of clear definition of the term. In 15 S. Williston, A Treatise on the Law of Contracts, § 1763A (3d ed. 1972) it is referred to as "so vague, that neither the courts, practicing attorneys, nor contract draftsmen can determine with any degree of certainty ..." when it will apply in any given situation. The same section refers to it as "an amorphous concept obviously designed to establish a broad business ethic." See also, Restatement (Second) of Contracts § 208 (1979). In Steinhardt v. Rudolph, 422 So.2d 884, 890 (Fla. 3d DCA 1982), review denied, 434 So.2d 889 (Fla. 1983), the court points out that the Restatement "does not even attempt to define unconscionability in a black letter rule of law, whether in procedural-substantive terms or otherwise, because the legal concept involved here is so flexible and chameleon-like."