[No. 60137-7-I.   Division One.   September 29, 2008.]

Arlene Sherman, *Petitioner*, v. Jennifer J. Kissinger et al., *Respondents*.

856

858

*Adam P. Karp* (of *Animal Law Offices*), for petitioner.

*John W. Schedler* (of *Lee Smart, PS*); *Mark E. Mills* (of *Law Offices of Kelley J. Sweeney*); and *Bruce C. Redman*, for respondents.

*Claire L. Davis* and *Matthew G. Liebman* on behalf of Animal Legal Defense Fund, amicus curiae.

*Kimberly Kamel, Phil Goldberg,* and *Victor E. Schwartz* on behalf of Animal Health Institute, American Kennel Club, and Pet Industry Joint Advisory Council, amici curiae.

¶1 SCHINDLER, C.J. — Arlene Sherman sued Jennifer J. Kissinger, DVM, and Broadway Veterinary Hospital (BVH) for damages arising from the death of her dog Ruby.[1] Sherman contends the trial court erred in ruling as a matter of law that the medical malpractice statute, chapter 7.70 RCW, applies to the treatment of animals by veterinarians and veterinary clinics and dismissing her claims against Kissinger and BVH for breach of fiduciary duty, negligent misrepresentation, conversion and trespass to chattels, and breach of bailment contract. On cross appeal, Kissinger and BVH assert that the court erred in denying their motion for partial summary judgment to limit Sherman's damages to the market value of her dog. Kissinger and BVH also assert that the court erred in ruling that Kissinger and BVH were not entitled to attorney fees under the small claims statute, RCW 4.84.250. We hold that the medical malpractice statute does not apply to the treatment of animals by veterinarians or veterinary clinics and therefore does not prevent Sherman from bringing claims

---

[1] Although Sherman characterizes her action as an action for "wrongful death," this is a misnomer because there is no such cause of action. Whether to establish a cause of action for the wrongful death of a dog is a matter for the legislature. In the last legislative session, the legislature considered, but did not adopt, a bill creating "a cause of action for the wrongful injury or death of a companion animal." HOUSE COMM. ON JUDICIARY, H.B. ANALYSIS on H.B. 2945, at 1, 60th Leg., Reg. Sess. (Wash. 2008). The bill appears modeled on the timber trespass statute, RCW 64.12.030, allowing recovery of "exemplary damages up to three times the actual damages sustained plus attorney's fees" for cruelty. *Id.*

against Kissinger and BVH for breach of fiduciary duty, negligent misrepresentation, conversion and trespass to chattels, and breach of bailment contract. There is no dispute that, as a matter of law, dogs are characterized as personal property. The measure of damages for the loss of personal property is set forth in *McCurdy v. Union Pacific Railroad*, 68 Wn.2d 457, 413 P.2d 617 (1966). Under *McCurdy*, the plaintiff has the burden of producing evidence to establish which measure of damages applies and the amount of damages. Here, because there are genuine issues of material fact about whether there is a market value for Ruby, we affirm denial of the motion for summary judgment to limit damages to market value. In addition, we agree with the court's determination that Kissinger and BVH are not entitled to attorney fees under the small claims statute and remand for trial.[2]

### FACTS

¶2 In November 2005, Arlene Sherman purchased a six-week-old apricot colored toy poodle for $550. Sherman named the dog Ruby.

¶3 At approximately 5:00 p.m. on May 26, 2006, Sherman brought Ruby to the Broadway Veterinary Hospital (BVH) to stay overnight in order to obtain a urine sample to determine if Ruby still had a urinary tract infection. Sherman signed a "Financial Responsibility Agreement and Authorization for Professional Services," authorizing BVH to perform diagnostic procedures and agreeing to assume all financial responsibility. According to Sherman, the receptionist told her that the urine sample would be collected from a plastic sheet placed beneath the dog's cage.

¶4 After reviewing the dog's chart, Jennifer Kissinger, DMV, decided to use cystocentesis to obtain a urine sample

---

[2] Because the decision to strike the affirmative defense of contributory negligence was without prejudice, Kissinger and BVH can seek to reassert that defense on remand.

that evening. "Cystocentesis" is " 'a procedure in which a needle is placed into the urinary bladder through the abdominal wall of an animal and a sample of urine is removed.' " According to Kissinger, " '[c]ystocentesis is essential for a urine culture (the procedure for which Ruby had been brought in for).' " BVH admits that no one told Sherman that a cystocentesis would be performed.

¶5 When Kissinger inserted the needle into Ruby, she drew blood instead of urine. Kissinger said she immediately removed the needle, applied pressure, and placed Ruby back in her cage. About a minute later, Ruby collapsed. Despite efforts to resuscitate the dog, Ruby died.

¶6 Following Ruby's death, BVH performed a number of tests in an attempt to determine the cause of death. In June 2006, Kissinger sent Sherman a letter stating that the DNA[3] test results did not indicate Ruby had a clotting disorder and that the cause of death was unknown.

¶7 In September 2006, Sherman sued Kissinger and BVH for negligence, breach of bailment, negligent hiring and supervision, negligent misrepresentation, conversion and trespass to chattels, breach of fiduciary duty, violation of the Consumer Protection Act (CPA), chapter 19.86 RCW, and negligent infliction of emotional distress. Sherman sought economic damages for the intrinsic value of Ruby, and noneconomic special and general damages for the loss of Ruby. Kissinger and BVH filed an answer, asserting as affirmative defenses that Kissinger and BVH acted reasonably, that Sherman gave consent for the procedure, that Sherman failed to state a claim for relief, and that Sherman failed to mitigate damages.

¶8 After BVH stipulated that it was liable for any wrongful acts or omissions of Kissinger and other BVH employees, Sherman dismissed her negligent hiring, negligent supervision, and CPA claims against BVH. On Kissinger's motion for partial judgment on the pleadings, the court also

---

[3] Deoxyribonucleic acid.

dismissed Sherman's claim for negligent infliction of emotional distress.

¶9 In April 2007, BVH and Kissinger filed a motion for partial summary judgment on the grounds that the medical malpractice act, chapter 7.70 RCW, applied by analogy to veterinarians and veterinary clinics and barred all of Sherman's claims except negligence. The trial court granted the motion, ruling that as a matter of law "RCW 7.70 applies to this case" and prevented Sherman from bringing such claims as breach of bailment contract, negligent misrepresentation, conversion and trespass to chattels, and breach of fiduciary duty. However, the court allowed Sherman to amend her complaint to allege medical battery and claims under chapter 7.70 RCW.

¶10 In the amended complaint, Sherman alleged a claim for medical battery and alleged Kissinger violated the standard of care and did not have consent to perform the cystocentesis. Kissinger and BVH asserted a number of additional affirmative defenses to the amended complaint, including that Sherman was contributorily negligent, Sherman was not entitled to intrinsic value damages for the loss of Ruby, and because Sherman's damages were less than $10,000, they were entitled to attorney fees under the small claims statute, RCW 4.84.250. Thereafter, Kissinger and BVH filed an offer of judgment of $2,000.

¶11 Sherman filed a motion to strike a number of the affirmative defenses asserted in answer to the amended complaint. The court granted Sherman's motion to strike the assertion of a right to attorney fees under the small claims statute. As to the motion to strike the affirmative defense of contributory negligence, the court granted the motion but "without prejudice to defendant's right to seek leave to amend later."

¶12 Kissinger and BVH filed a motion for partial summary judgment arguing that as a matter of law Sherman's damages were limited to a market value of less than $200. In support of the motion, Kissinger submitted the declaration of dog breeder Donna Convery. Convery testified that

there is a market for a dog such as Ruby and that in May 2006, the "approximate market value" for Ruby was $100 to $200.

¶13 In opposition, Sherman moved to strike Convery's declaration for lack of foundation and submitted declarations from dog breeder Linda Pipkin, dog trainer Jennifer Schneider, counselor Ann Howie, and Dr. Mary Nitschke, an expert in the field of interspecies communication and the human-animal bond. Pipkin testified that there was no market for Ruby because the dog had a clotting disorder. Howie and Dr. Nitschke testified about Sherman's strong emotional bond with Ruby and that the dog was irreplaceable. Schneider testified about Sherman's grief over the loss of Ruby. Kissinger and BVH filed a motion to strike the declarations of Pipkin, Howie, and Dr. Nitschke, and the paragraph of Schneider's declaration stating that Sherman's grief for Ruby was the same as the grief for a human. The court denied the motions to strike Convery's, Pipkin's, and Dr. Nitschke's declarations. The court granted the motion to strike the challenged paragraph in Schneider's declaration. The court also granted the motion to strike Howie's declaration as cumulative. The court denied Kissinger and BVH's motion for partial summary judgment to limit damages to the market value of $100 to $200.[4]

¶14 Sherman appeals the trial court's ruling that the medical malpractice statute applies and the decision denying the motion to strike Convery's declaration on market value. Kissinger and BVH cross appeal denial of the motion

---

[4] In the order, the court also stated that

[t]he central measure of damages is the intrinsic value of the property lost. It is inappropriate to restrict the value of Ruby to $100 or $200. The plaintiff is permitted to present evidence of and assign value to Ruby with respect to her actual value. The value of a pet animal is qualitatively different than non-animated property.

Because our review of summary judgment is de novo, the court's findings of fact and conclusions of law are superfluous and are not considered on appeal. *Concerned Coupeville Citizens v. Town of Coupeville*, 62 Wn. App. 408, 413, 814 P.2d 243 (1991).

for partial summary judgment to limit damages to the market value of $100 to $200 and denial of the motion to strike the affirmative defense that Sherman is not entitled to intrinsic value damages. Kissinger and BVH also challenge the trial court's decision that they are not entitled to attorney fees under the small claims statute. A commissioner of this court granted discretionary review under RAP 2.3(b)(4).[5]

## ANALYSIS

### Application of the Medical Malpractice Act to Veterinarians

¶15 Sherman contends the trial court erred in ruling as a matter of law that the medical malpractice act, chapter 7.70 RCW, applies to the treatment of animals by veterinarians and veterinary clinics. Kissinger and BVH convinced the trial court that Sherman was entitled to pursue only the limited causes of action allowed under the medical malpractice act.

¶16 Whether the medical malpractice act applies to veterinarians and veterinary clinics is a question of law we review de novo. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002); *W. Telepage, Inc. v. City of Tacoma Dep't of Fin.*, 140 Wn.2d 599, 607, 998 P.2d 884 (2000). The objective of statutory interpretation is to ascertain and carry out legislative intent. *Campbell & Gwinn*, 146 Wn.2d at 9-10. If the meaning of a statute is plain on its face, the court must give effect to that plain meaning as an expression of legislative intent. *Campbell & Gwinn*, 146 Wn.2d at 9-10. Each provision of a statute should be read together with other provisions to achieve a harmonious and unified statutory scheme. *In re Estate of Kerr*, 134 Wn.2d 328, 336, 949 P.2d 810 (1998). Statutes such as the medical malpractice act that are in derogation of the common law

---

[5] RAP 2.3(b)(4) provides in pertinent part that ". . . all parties to the litigation have stipulated, that the order involves a controlling question of law as to which there is substantial ground for a difference of opinion and that immediate review of the order may materially advance the ultimate termination of the litigation."

must be construed narrowly. *Cosmopolitan Eng'g Group, Inc. v. Ondeo Degremont, Inc.*, 159 Wn.2d 292, 303, 149 P.3d 666 (2006).

■ ¶17 In response to a perceived crisis in the cost of malpractice insurance for doctors and a corresponding rise in health care costs, the legislature adopted the medical malpractice act, "Actions for Injuries Resulting from Health Care," chapter 7.70 RCW, to limit civil causes of action against a health care provider. 1976 FINAL LEGISLATIVE REPORT, 44th Wash. Leg., 2d Ex. Sess., at 22.

> The state of Washington, exercising its police and sovereign power, hereby modifies as set forth in this chapter and in RCW 4.16.350, as now or hereafter amended, certain substantive and procedural aspects of all civil actions and causes of action, whether based on tort, contract, or otherwise, for damages for injury occurring as a result of health care which is provided after June 25, 1976.

RCW 7.70.010.

¶18 In adopting the act, the legislature expressly limited medical malpractice actions for injuries against health care providers to claims based on the failure to follow the accepted standard of care, the breach of an express promise by a health care provider, and the lack of consent. RCW 7.70.030 provides in pertinent part:

> No award shall be made in any action or arbitration for damages for injury occurring as the result of health care which is provided after June 25, 1976, unless the plaintiff establishes one or more of the following propositions:
>
> (1) That injury resulted from the failure of a health care provider to follow the accepted standard of care;
>
> (2) That a health care provider promised the patient or his representative that the injury suffered would not occur;
>
> (3) That injury resulted from health care to which the patient or his representative did not consent.

■ ¶19 Reading RCW 7.70.010 and .030 together, the court in *Branom v. State*, 94 Wn. App. 964, 969, 974 P.2d

335 (1999), held that an action for damages from injuries that occur as a result of health care is governed exclusively by chapter 7.70 RCW. The court concluded that chapter 7.70 RCW, by its terms, expressly applies to all civil actions against health care providers. While "health care" is not defined, the court construed the phrase to mean " 'the process in which [a physician is] utilizing the skills which he had been taught in examining, diagnosing, treating, or caring for the plaintiff as his patient.' " *Branom*, 94 Wn. App. at 969 (alteration in original) (quoting *Estate of Sly v. Linville*, 75 Wn. App. 431, 439, 878 P.2d 1241 (1994)).

¶20 RCW 7.70.065 sets forth who is authorized to obtain "[i]nformed consent for health care for a patient" and expressly adopts the definition of "health care" that is set forth in RCW 70.02.010. RCW 70.02.010(5) defines "health care" as

> "Health care" means any care, service, or procedure provided by a health care provider:
>
> (a) To diagnose, treat, or maintain a patient's physical or mental condition; or
>
> (b) That affects the structure or any function of the *human body*.[6]

¶21 The legislature also uses the term "patient" throughout the statute to refer to humans. For example, a health care provider must "secure an informed consent by a patient or his representatives" and the consent must be "in language the patient could reasonably be expected to understand . . . ." RCW 7.70.050, .060(1)(a).[7] Based on the plain and unambiguous language of chapter 7.70 RCW, we conclude the act applies only to human health care and does not apply to veterinarians or veterinary clinics.

¶22 Legislative history also supports our conclusion that the medical malpractice act does not apply to veterinary

---

[6] (Emphasis added.)

[7] According to RCW 7.70.065, representatives include the patient's spouse, children, parents, or siblings. Contrary to Kissinger and BVH's argument that Sherman is a representative because she paid for Ruby's care, the definition of a "representative" does not include a person paying for a patient's health care.

care. The references to "patients" in the 1976 *Final Legislative Report* make clear that the legislature's concern was limited to human health care. The statute "requires a physician to inform his patient of all material facts concerning a course of medical treatment so that the patient has the information with which to 'intelligently chart his destiny.'" 1976 FINAL LEGISLATIVE REPORT, *supra*, at 23. And, the legislature states that a fact is material if "'a reasonably prudent person in the patient's position would attach significance to it' in deciding whether or not to undergo the treatment." 1976 FINAL LEGISLATIVE REPORT, *supra*, at 23.

¶23 Kissinger and BVH claim that because the definition of "health care provider" is not limited to the providers listed, the medical malpractice act applies to veterinarians and veterinary clinics. RCW 7.70.020 defines "health care provider," in pertinent part:

As used in this chapter "health care provider" means . . . :

(1) A person licensed by this state to provide health care or related services, including, but not limited to, a licensed acupuncturist, a physician, osteopathic physician, dentist, nurse, optometrist, podiatric physician and surgeon, chiropractor, physical therapist, psychologist, pharmacist, optician, physician's assistant, midwife, osteopathic physician's assistant, nurse practitioner, or physician's trained mobile intensive care paramedic, including, in the event such person is deceased, his or her estate or personal representative . . . .

¶24 While the words "including, but not limited to" indicate an intent to include providers beyond the occupations listed, the legislature's specific qualification of the term "as used in this chapter" requires us to interpret the statute to mean that the enumeration of "health care" providers are limited to those that only relate to human health. *City of Seattle v. State*, 136 Wn.2d 693, 698, 965 P.2d 619 (1998).

¶25 Kissinger and BVH also claim that because chapter 18.120 RCW, "Regulation of health professions—criteria," and chapter 18.130 RCW, "Regulation of health profes-

sions—uniform disciplinary act," apply to both doctors and veterinarians, veterinarians are "health care providers" under the medical malpractice act. We disagree. The purpose of chapter 18.120 RCW is to establish guidelines and ensure that regulations "imposed upon any health profession [are] for the exclusive purpose of protecting the public interest." RCW 18.120.010(2). The purpose of chapter 18.130 RCW is to regulate "disciplinary and licensure procedures for the licensed health and health-related professions and businesses" by providing uniform disciplinary procedures and licensing requirements. RCW 18.130.010. Neither of these unrelated regulatory statutes means that the limitation of claims against doctors in the medical malpractice act includes veterinarians. We also do not assume that the legislature intended to significantly change the law by implication. *Schumacher v. Williams*, 107 Wn. App. 793, 801, 28 P.3d 792 (2001). In addition, language that is used or not used in different chapters of the RCW does not dictate the proper interpretation of an unrelated, separate, and distinct chapter. *In re Det. of Capello*, 114 Wn. App. 739, 751, 60 P.3d 620 (2002).

¶26 Because the medical malpractice act, chapter 7.70 RCW, does not apply to veterinarians and veterinary clinics, we reverse the trial court's decision to dismiss Sherman's claims against Kissinger and BVH for breach of bailment contract, negligent misrepresentation, conversion and trespass to chattels, and breach of fiduciary duty.[8] By reinstating these claims, we are not deciding that these claims are viable or that Sherman is entitled to proceed to trial on any of them.

*Damages*

¶27 On cross appeal, Kissinger and BVH argue that the court erred in denying the motion for partial summary

---

[8] The court granted Sherman's motion to strike the affirmative defense of contributory negligence, "without prejudice to the defendant's right to seek leave to amend later." Because Sherman's claims are reinstated, on remand Kissinger and BVH can seek permission to reassert contributory negligence as an affirmative defense.

judgment to limit Sherman's damages for Ruby's death to market value. The parties dispute the measure and burden of proof for damages. In addition, Kissinger and BVH argue the court erred in striking the affirmative defense that Sherman is not entitled to damages for Ruby's intrinsic value and denying the motion to strike the declarations submitted by Sherman in opposition to the motion for partial summary judgment on damages.

¶28 We review summary judgment de novo and engage in the same inquiry as the trial court. *Heath v. Uraga*, 106 Wn. App. 506, 512, 24 P.3d 413 (2001). Summary judgment is proper if the pleadings, depositions, answers, and admissions, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. CR 56(c). A trial court's denial of a motion to strike an affirmative defense is reviewed for abuse of discretion. *King County Fire Prot. Dist. No. 16 v. Hous. Auth.*, 123 Wn.2d 819, 826, 872 P.2d 516 (1994). The admissibility of evidence is within the discretion of the trial court, and a reviewing court will reverse only when the trial court abuses its discretion. *City of Kennewick v. Day*, 142 Wn.2d 1, 5, 11 P.3d 304 (2000). An expert's opinion is admissible if the witness is qualified, relies on generally accepted theories, and is helpful to the trier of fact. *Philippides v. Bernard*, 151 Wn.2d 376, 393, 88 P.3d 939 (2004) ("We construe helpfulness to the trier of fact broadly.").

¶29 It is well established, and Sherman does not dispute, that as a matter of law pets are characterized as personal property. *Mansour v. King County*, 131 Wn. App. 255, 267, 128 P.3d 1241 (2006) ("[A]lthough we have recognized the emotional importance of pets to their families, legally they remain in many jurisdictions, including Washington, property.").

¶30 In *McCurdy*, 68 Wn.2d 457, the Washington Supreme Court sets forth a three part analysis for the measure of damages for the loss of personal property.

> If the property is a total loss the measure of damages is the value of the property destroyed or damaged. This is its market value, if it has a market value. If the property is damaged but not destroyed, the measure of damages is the difference between the market value of the property before the injury and its market value after the injury. (Again, if it has a market value.) If the property does not have a market value, then if a total loss, the measure of damages is the cost to replace or reproduce the article. If it cannot be reproduced or replaced, then its value to the owner may be considered in fixing damages.

*McCurdy*, 68 Wn.2d at 467.

¶31 In *McCurdy*, because there was evidence of the property's market value, the court reversed the trial court's refusal to give a jury instruction on market value. The court defined "market value" to mean the "reasonable sum of money which the property would bring on a fair sale, by a man willing to sell, but not obliged to sell, to a man willing to buy, but not obliged to buy." *McCurdy*, 68 Wn.2d at 467. Because the measure of damages was disputed, the court held that on remand the trial court should instruct the jury to first consider whether there was a market value for the property before considering intrinsic value damages. "If the jury, having been instructed on market value, nevertheless finds that there was no market value, then [the property's] actual or intrinsic value, including consideration of its value to the owner, may be used by the jury in fixing damages." *McCurdy*, 68 Wn.2d at 469.

¶32 In *Mieske v. Bartell Drug Co.*, 92 Wn.2d 40, 593 P.2d 1308 (1979), the jury awarded the plaintiffs damages for family movie films that were destroyed. On appeal, the court adopted the measure of damages set forth in *McCurdy* and rejected the argument that as a matter of law the plaintiffs were entitled only to damages for the cost of replacing the film because blank film "is not what the plaintiffs' lost." Because the plaintiffs in *Mieske* proved that there was no market value and the destroyed film could not be replaced, the court held that the plaintiffs were entitled to the value to the owner, also referred to as the intrinsic

value of the property. *Mieske*, 92 Wn.2d at 44. However, recognizing that there was a subjective element to intrinsic value damages, the court clarified that while not explicitly stated in *McCurdy*, if the jury decides that the proper measure of damages is the value to the owner, the jury cannot consider sentimental value. "[W]hile not stated in *McCurdy*, we have held that in the third *McCurdy* situation, [value to the owner] damages are not recoverable for the sentimental value which the owner places on the property." *Mieske*, 92 Wn.2d at 43-44. The court in *Mieske* defined "sentimental" value as " 'indulging in feeling to an unwarranted extent' " or being " 'affectedly or mawkishly emotional.' " 92 Wn.2d at 45 (quoting WEBSTER'S THIRD INTERNATIONAL DICTIONARY 2069 (1961)). In describing the measure of damages for the intrinsic value of the property, the court also acknowledged it is somewhat imprecise, but concluded that the difficulty of assessing intrinsic value should not preclude damages where the plaintiff establishes there is no market or replacement value.

> Necessarily the measure of damages in these circumstances is the most imprecise of the three categories. Yet difficulty of assessment is not cause to deny damages to a plaintiff whose property has no market value and cannot be replaced or reproduced.

*Mieske*, 92 Wn.2d at 44.

¶33 In proving intrinsic value, while the owner can testify about the value of the property, that testimony is not binding. Rather in determining damages, the fact finder must consider the evidence objectively from the perspective of a reasonable owner in the plaintiff's position. *James v. Robeck*, 79 Wn.2d 864, 869, 490 P.2d 878 (1971). In *Stephens v. Target Corp.*, 482 F. Supp. 2d 1234, 1236 (W.D. Wash. 2007), the court suggested that one way the jury could determine intrinsic damages was to "consider the dog's utility (for lack of a better term) in assessing its intrinsic value; such an assessment is confined by the limitation on sentimental or fanciful value set forth in *Mieske*, 593 P.2d at 1311."

¶34 However, it is well established that a pet owner has no right to emotional distress damages or damages for loss of human-animal bond based on the negligent death or injury to a pet. In *Pickford v. Masion*, 124 Wn. App. 257, 260, 98 P.3d 1232 (2004), we held that the plaintiff was not entitled to recover damages for negligent infliction of emotional distress or damages for loss of companionship and the human-animal relationship for the negligent death or injury of a pet.[9] However, in *Womack v. Rardon*, 133 Wn. App. 254, 263, 135 P.3d 542 (2006), the court held that malicious injury to an animal can support a claim for emotional distress damages.

¶35 Kissinger and BVH's reliance on *Dillon v. O'Connor*, 68 Wn.2d 184, 412 P.2d 126 (1966), to argue that as a matter of law Sherman's damages are limited to market value, is misplaced. In *Dillon*, the defendant negligently killed the plaintiff's dog while driving his car. The plaintiff sued for the market value of his trained, four-year-old hunting dog. While the Supreme Court stated that the dog's training and pedigree were factors the jury could consider in determining the fair market value, the court held the jury instruction that authorized the jury to award damages for factors "over and above" market value was an erroneous statement of the law and ambiguous.

¶36 While the measure of damages for personal property is a question of law, the plaintiff bears the burden of producing evidence to show which measure of damages applies. *McCurdy*, 68 Wn.2d at 467; *Fisher Props., Inc. v. Arden-Mayfair, Inc.*, 115 Wn.2d 364, 368, 798 P.2d 799 (1990), *Agranoff v. Morton*, 54 Wn.2d 341, 347, 340 P.2d 811

---

[9] Sherman contends the trial court abused its discretion in striking the portion of Schneider's declaration stating that Sherman mourned for Ruby "the way someone would grieve for a human passing . . . ." Because Sherman is not entitled to emotional distress damages, the trial court did not abuse its discretion in striking that portion of Schneider's declaration. However, because Sherman is entitled to pursue her intentional tort claims on remand, if Sherman proves willful misconduct or tort, Kissinger's actions were not justified, and Sherman may be entitled to emotional distress damages. *Birchler v. Castello Land Co.*, 133 Wn.2d 106, 116, 942 P.2d 968 (1997) (citing *Cagle v. Burns & Roe, Inc.*, 106 Wn.2d 911, 916, 726 P.2d 434 (1986), recovery of emotional distress damages for intentional torts is consistent with the modern rule).

(1959); *Womack*, 133 Wn. App. at 262 (the party claiming damages bears the burden of proof). The amount of damages is a question of fact, and the fact finder has the ultimate authority to weigh the evidence and determine the amount of damages in a particular case. *James*, 79 Wn.2d at 869.

¶37 Consequently, where, as here, the plaintiff seeks to establish that the third measure of damages applies, the plaintiff must produce evidence showing that the property does not have a fair market value and cannot be replaced. If the plaintiff claiming damages meets this burden, the burden then shifts to the other party to present evidence on the measure of damages. *Agranoff*, 54 Wn.2d at 347.

¶38 Here, Kissinger and BVH contend the trial court erred in denying their motion for partial summary judgment to limit Sherman's recovery because Donna Convery's testimony that Ruby has a market value of $100 to $200 was unrebutted.

¶39 Assuming Ruby was a purebred toy poodle, Convery testified that "[b]ased on my experience in breeding and selling toy poodles, the approximate market value of this dog in May 2006 was between $100 and $200." However, viewing the evidence in the light most favorable to Sherman, there is testimony that Ruby could not be replaced and did not have a market value because of a clotting disorder. Sherman's experts, Dr. Nitschke and Howie, testified about why Ruby was irreplaceable.[10] And Pipkin testified that "Ruby, and any toy poodle of similar sex and age with such a clotting disorder, would not be suitable for sale . . . ."

¶40 And in a letter to Sherman after Ruby's death, Kissinger states that she suspected Ruby "had a rare platelet coagulation defect." The letter states in pertinent part:

---

[10] While the testimony of Dr. Nitschke concerning loss of the human-animal bond is not admissible under *Pickford*, testimony about whether Ruby is irreplaceable and Ruby's intrinsic value can be admissible. However, the trial court should be mindful of the case law that precludes establishing damages on the basis of sentiment or loss of companionship.

We have now done every test we can think of to try and diagnose the exact reason for Ruby's excessive bleeding at the time of the cystocentesis, but we have not been able to confirm a diagnosis. . . . The lack of blood clots in the abdomen at the time of her necropsy, as well as her propensity to have bruising and hematomas with blood draws are all suspicious for a coagulation defect. . . . We will never actually know if Ruby truly had a rare platelet coagulation defect or not, at this point. I am quite suspicious she did, since the necropsy showed that the cystocentesis procedure did not lacerate any of the major abdominal blood vessels.

¶41 Viewing the evidence in the light most favorable to Sherman, there are material issues of fact concerning whether there was a market value for Ruby, whether Ruby can be replaced, and whether Sherman is entitled to present evidence of the intrinsic value damages for the loss of Ruby. We affirm the trial court's decision denying the motion for partial summary judgment that attempted to limit Sherman's damages to the market value of Ruby.

*RCW 4.84.250*

¶42 Kissinger and BVH claimed that they were entitled to attorney fees under the small claims statute, RCW 4.84.250, asserting that Sherman's damages are less than $10,000. Sherman specifically pleaded damages in excess of $10,000. However, Kissinger and BVH rely on the offer of judgment they made to argue that the amount pleaded is less than $10,000. The offer of judgment states, "[D]efendants hereby plead and allege the damages for the claims against them are less than ten thousand dollars ($10,000), and that if they are the prevailing parties, they will seek attorney's fees pursuant to RCW 4.84.250-.290."

¶43 RCW 4.84.250 provides that if the "amount pleaded by the prevailing party" is $10,000 or less, a party who makes a settlement offer will receive attorney fees if the offer is rejected and the party prevails in the action.

Notwithstanding any other provisions of chapter 4.84 RCW and RCW 12.20.060, in any action for damages where the

amount pleaded by the prevailing party as hereinafter defined, exclusive of costs, is seven thousand five hundred dollars or less, there shall be taxed and allowed to the prevailing party as a part of the costs of the action a reasonable amount to be fixed by the court as attorneys' fees. After July 1, 1985, the maximum amount of the pleading under this section shall be ten thousand dollars.

RCW 4.84.250. Under RCW 4.84.270, the defendant is the prevailing party if the "amount pleaded" in the plaintiff's complaint is $10,000 or less and the defendant made a settlement offer equal to or greater than the amount the plaintiff recovers at trial.

> The defendant, or party resisting relief, shall be deemed the prevailing party within the meaning of RCW 4.84.250, if the plaintiff, or party seeking relief in an action for damages where the amount pleaded, exclusive of costs, is equal to or less than the maximum allowed under RCW 4.84.250, recovers nothing, or if the recovery, exclusive of costs, is the same or less than the amount offered in settlement by the defendant, or the party resisting relief, as set forth in RCW 4.84.280.

RCW 4.84.270.

¶44 In *Reynolds v. Hicks*, 134 Wn.2d 491, 951 P.2d 761 (1998), the court held that according to the plain language of the statute, RCW 4.84.250 applies only when a plaintiff pleads a claim for damages of $10,000 or less. *Reynolds*, 134 Wn.2d at 502 (citing *Klein v. City of Seattle*, 41 Wn. App. 636, 640, 705 P.2d 806 (1985)). Here, Sherman's complaint expressly states that "[p]laintiff intends to seek damages in excess of $10,000. Accordingly, this case is not subject to RCW 4.84.250-280." The trial court did not err in ruling that RCW 4.84.250 does not apply and striking the affirmative defense that Kissinger and BVH are entitled to attorney fees under the small claims statute, RCW 4.84.250.

## CONCLUSION

¶45 Because we conclude the medical malpractice act does not apply to veterinarians and veterinary clinics, the

act does not operate to exclude Sherman's claims for breach of fiduciary duty, negligent misrepresentation, conversion and trespass to chattels, and breach of bailment contract. The three-part analysis of *McCurdy* controls the measure of damages and the burden of proof for damages arising from the death of Sherman's dog. Because there are material issues of fact about the measure and amount of damages, we affirm the trial court's decision to deny Kissinger and BVH's motion for partial summary judgment to limit damages to fair market value. We also affirm the trial court's decision that Kissinger and BVH are not entitled to attorney fees under the small claim statute and remand for further proceedings consistent with this opinion.

BECKER and LEACH, JJ., concur.

Reconsideration granted and opinion modified November 18, 2008.